*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 42**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

BART GRANT,[1]
*Petitioners,*

*v.*

GOVERNOR GARY R. HERBERT, LIEUTENANT GOVERNOR
SPENCER COX, DIRECTOR OF ELECTIONS JUSTIN LEE, and
MEMBERS OF THE 62ND UTAH STATE LEGISLATURE,
*Respondents.*

No. 20180997
Filed August 7, 2019

On Petition for Extraordinary Relief

Attorneys:

Bart Grant, Monroe, Steven G. Maxfield, Kanosh, Daniel Newby,
Taylorsville, pro se petitioners

---

[1] STEVEN G. MAXFIELD, DANIEL NEWBY, ERIN WORKMAN, GARY CLARK, RUSSELL JOHNSEN, KATHRYN GRITTON, JOSEPH RUSSO, BRUCE B. HANKS, DESI ESCOBEDO, BRIGHTON ROPER, TERRY TREASE, ROBERT BENCH, JEREMY LYLE, WALTER APPEL, DELANNE JESSOP HASLAM, JANALEE TOBIAS, ROSE COWAN, DARIN DENAUGHEL, DAVID REMKES, ANTHONY P. GARCIA, JENNIFER ADAMS, JOHN ADAMS, JUSTIN WOODARD, RICK SMILEY, CARMEN M. SMILEY, DAVID D. PILLING, KIMBERLY BEARD, AUBREE RYDALCH, JENNIFER F. BEARD, BRITTANY RYDALCH, SHELBY RYDALCH, ZACHARIAS NEWBY, JOSEPH NEWBY, RANDY NIELSEN, JOANNE TAYLOR, MARC W. TAYLOR, JORDAN SPENCER, WARREN DINTELMANN, CARLA WHITEHOUSE, JEAN-PAUL GIUDICI, JAIMIE A. HARRINGTON, LORI M. NEWBY, LEELA YOUNG, ADAM LINDLEY, LISA SMITH, PERRY BUCKNER, JAMES E. ROUNDS, SHARLA CHRISTIE, JEREMY RETAMAR ARRIETA, GARY LAMANTIA, WILLIAM THOMPSON, and RANDY N. MILLER are also petitioners in this case.

Sean D. Reyes, Att'y Gen., Tyler R. Green, Solic. Gen., Stanford E. Purser, Deputy Solic. Gen., Salt Lake City, for respondents Governor Gary R. Herbert, Lieutenant Governor Spencer J. Cox, and Director of Elections Justin Lee

Eric N. Weeks, Christine R. Gilbert, Lee A. Killian, Salt Lake City, for respondents Members of the 62nd Utah State Legislature

---

JUSTICE PETERSEN authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, and JUDGE APPLEBY joined.

Having recused himself, JUSTICE PEARCE does not participate herein. COURT OF APPEALS JUDGE KATE APPLEBY sat.

---

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1    In the 2018 general election, Utah voters approved a citizens' initiative that legalized medical cannabis. Before the law's effective date, Governor Gary R. Herbert called for a special session of the Utah Legislature. During the special session, the legislature replaced the initiative with its own statute: House Bill 3001. The day H.B. 3001 passed, some of the Petitioners in this case filed a referendum application with Lieutenant Governor Spencer J. Cox. If successful, the application would have allowed H.B. 3001 to be put to a vote of the people. But the application was not successful. The Lieutenant Governor denied it because he determined one of the referendum sponsors did not meet the applicable statutory requirements, and because both the Utah House of Representatives and the Utah Senate passed H.B. 3001 by more than a two-thirds vote. Under the Utah Constitution, when both houses of the legislature pass a bill by a supermajority, it is referendum-proof.

¶2    Petitioners bypassed the district court and brought this petition for extraordinary relief directly to us. They argue that the actions of the Governor, Lieutenant Governor, and the Utah Legislature are unconstitutional in a number of ways. For the reasons explained below, we dismiss the petition.

2

## BACKGROUND

¶3 The Utah Constitution gives the "legal voters of the State of Utah" the right to "initiate any desired legislation and cause it to be submitted to the people for adoption upon a majority vote of those voting on the legislation, as provided by statute." UTAH CONST. art. VI, § 1(2)(a)(i).

¶4 The initiative at issue here is the Utah Medical Cannabis Act. After determining that the initiative had received a sufficient number of verified signatures, the Lieutenant Governor ordered that the Utah Medical Cannabis Act be placed on the 2018 general election ballot as Proposition 2. Utah voters passed Proposition 2, and it went into effect on December 1, 2018.

¶5 The day before Proposition 2's effective date, the Governor called for a special session of the Utah Legislature. The special session was convened on December 3, 2018, to consider, along with two other topics, "[a]mending the Utah Medical Cannabis Act and related provisions." During the one-day special session, H.B. 3001, also titled the Utah Medical Cannabis Act, was introduced. The bill amended many of the provisions of Proposition 2.[2] When legislators voted on H.B. 3001, it passed by a two-thirds supermajority in both houses.

¶6 The Governor signed H.B. 3001 into law the same day. Immediately, Petitioners Steven G. Maxfield, Daniel Newby, Bart Grant, and Sharla Christie, as well as Lelia M. Grant, filed a referendum application with the Lieutenant Governor. While an

---

[2] For context, we highlight a few of the similarities and differences between Proposition 2 and H.B. 3001. They both provide for the use and distribution of medical cannabis within the State of Utah. *See* Proposition 2 § 26-60b-201; H.B. 3001 § 26-61a-201. H.B. 3001 amended Proposition 2 to reduce the number of cannabis cultivation facility licenses available, *compare* Proposition 2 § 4-41b-204, *with* H.B. 3001 § 4-41a-205, and reduce the number of medical cannabis dispensary/pharmacy licenses available, *compare* Proposition 2 § 26-60b-304, *with* H.B. 3001 § 26-61a-305. H.B. 3001 also amended the "qualifying condition" list found in Proposition 2, but there remains some overlap. *Compare* Proposition 2 § 26-60b-105, *with* H.B. 3001 § 26-61a-104. This is not a comprehensive comparison of Proposition 2 and H.B. 3001.

initiative is the means by which voters can place voter-initiated legislation on the ballot, a referendum is the means by which voters can place a law passed by the legislature on the ballot for approval or rejection by the people. *See id.* art. VI, § 1(2)(a)(i)(B). A referendum application begins this process.

¶7 Petitioners' referendum application sought to place H.B. 3001 on the ballot for voters to approve or reject.[3] However, the Lieutenant Governor denied Petitioners' application because he found that Petitioner Newby did not meet the applicable statutory requirements, and because both houses of the legislature passed H.B. 3001 by a two-thirds supermajority.

¶8 Petitioners timely filed a petition for extraordinary relief with this court. We exercise jurisdiction pursuant to Utah Code section 78A-3-102(2).

## STANDARD OF REVIEW

¶9 The decision to grant a petition for extraordinary relief "lies within the sound discretion of this court." *Mawhinney v. City of Draper*, 2014 UT 54, ¶ 5, 342 P.3d 262 (citation omitted) (internal quotation marks omitted); *see also Krejci v. City of Saratoga Springs*, 2013 UT 74, ¶ 10, 322 P.3d 662 ("The decision to grant or deny a petition for extraordinary writ is discretionary.").

## ANALYSIS

¶10 Petitioners have named the Governor, the Lieutenant Governor, the Director of Elections, and each individual member of the 62nd Utah State Legislature as Respondents in their petition. Petitioners argue that: (1) the Governor exceeded his authority by convening a special session of the Utah Legislature without "exigent circumstances"; (2) the Governor effectively vetoed Proposition 2 in violation of Utah Code section 20A-7-212(3)(a), which prohibits the Governor from vetoing

---

[3] If referendum sponsors meet the statutory requirements, a referendum is placed on the ballot either during the next regular general election or during a special election called by the governor. UTAH CODE § 20A-7-301(1)(b) (2018).

The Utah Code provisions involving initiatives and referenda were amended during the legislature's 2019 General Session. The amendments took effect on May 14, 2019. The statutory provisions cited throughout this opinion are the 2018 provisions.

citizen initiatives; and (3) the Lieutenant Governor wrongly denied the referendum application because (a) the statutory requirements for a referendum sponsor are unconstitutional (as applied to Petitioner Newby), and (b) the constitutional and statutory provisions preventing referenda on laws passed by two-thirds of both houses of the legislature should not apply to legislation that originated from a citizen initiative. Petitioners also request a number of remedies that do not necessarily correlate with a specific legal claim.

¶11    Before we address Petitioners' arguments, however, we must resolve two issues raised by Respondents. First, the Legislators argue that some Petitioners lack standing. And second, Respondents argue that Petitioners have not met the requirements of rule 19 of the Utah Rules of Appellate Procedure, which governs this petition.

## I. STANDING

¶12    Petitioners divide themselves into two classes: class one Petitioners are "legal voters who exercised their constitutional rights to enact public policy via the [i]nitiative process"; and class two Petitioners are "Maxfield, Newby, and Grant [who] filed a completed referendum application with the [Lieutenant Governor's] office that was subsequently denied." The Legislators argue that class one Petitioners lack standing.

¶13    However, we need not resolve whether some Petitioners lack standing because it is undisputed that class two Petitioners do have standing. And because at least some Petitioners have standing, this issue does not present an obstacle to reaching the merits of the petition. *See Massachusetts v. E.P.A.*, 549 U.S. 497, 518 (2007) ("Only one of the petitioners needs to have standing to permit us to consider the petition for review."); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263–64 (1977) (forgoing deciding an issue of standing because there was "at least one individual plaintiff who has demonstrated standing to assert [the] rights [at issue] as his own");[4] *Snow v. Office of*

---

[4] We recognize that Utah standing law and federal standing law are not identical. *See Brown v. Div. of Water Rights of Dep't of Nat. Res.*, 2010 UT 14, ¶ 17, 228 P.3d 747 ("Although our standing requirements and the federal standing requirements are similar

(cont.)

*Legislative Research & Gen. Counsel*, 2007 UT 63, ¶ 10, 167 P.3d 1051 (consolidating two petitions to eliminate "the legal difficulty relating to standing for [one class of] petitioners" and to allow the court "to address the central questions raised by the parties without delay").

## II. RULE 19 OF THE UTAH RULES OF APPELLATE PROCEDURE

¶14  We must also address Respondents' argument that Petitioners have not met some of the requirements of Utah Rule of Appellate Procedure 19, which governs this petition along with Utah Rule of Civil Procedure 65B.

¶15  As Respondents note, we typically limit ourselves to "addressing only those petitions that cannot be decided in another forum." *Carpenter v. Riverton City*, 2004 UT 68, ¶ 4, 103 P.3d 127 (per curiam). Rule 19 requires, among other things, that a petition filed directly in this court show that "no other plain, speedy, or adequate remedy exists," and even then, "why it is impractical or inappropriate to file the petition for a writ in the district court." UTAH R. APP. P. 19(b)(4)–(5). A petition must also contain a "memorandum of points and authorities in support of the petition." *Id.* 19(b)(7).

¶16  Respondents argue that Petitioners have not met these requirements, and for the most part Respondents are correct. In their briefing and at oral argument, the only explanation Petitioners provided as to why they are entitled to proceed under rule 19 is that the referendum process is expedited: referendum sponsors have only five days to submit an application and forty days to gather signatures. *See* UTAH CODE §§ 20A-7-302(1), -306(1)(a). But this does not address why no other remedy exists or why Petitioners could not have filed in the district court. If Petitioners were to prevail in any court, the applicable timelines to proceed with the referendum would presumably start anew. And Petitioners have not identified any other looming deadline they must meet.

---

(cont.)

. . . they are not identical."). But those differences are not implicated here.

¶17 Further, Petitioners have not attempted to explain why they could not initiate this petition in the district court. This is problematic for Petitioners. *See Anderson v. City*, 2016 UT 50, ¶ 6, 387 P.3d 1014 (per curiam) (denying petitions for extraordinary relief because petitioners had "not shouldered their burden of establishing that it would be impractical or inappropriate for them to file their petitions in the district court"); *see also Zonts v. Pleasant Grove City*, 2017 UT 71, ¶ 4, 416 P.3d 360 (per curiam) (denying a petition for extraordinary relief after supplemental briefing failed to persuade the court that the petitioners "could not have asked the district court to review their contentions in the first instance").

¶18 Petitioners advance a number of positions and request a wide range of relief that we are unable to resolve on the record before us. For example, Petitioners argue: it was unconstitutional for the Governor to call a special session in the absence of "exigent circumstances"; the special session violated the people's right to vote on substantial, meaningful, and effective legislation; and the five-day period for Petitioners to gather sponsors unduly burdens the referendum right, among other arguments. But the legal basis for these arguments is not developed. And we have no factual record before us. "When an appellate court considers a petition for extraordinary relief without any record generated by prior litigation or other official proceedings, it ordinarily may grant relief only if that relief is based on allegations properly supported by affidavit or other reliable documentation." *Gricius v. Cox*, 2015 UT 86, ¶ 5, 365 P.3d 1198 (per curiam). We reiterate that "district courts are better equipped to resolve factual questions and that starting in the district court allows parties to create the record that enables this court to conduct a more meaningful review." *Zonts*, 2017 UT 71, ¶ 4.

¶19 However, Petitioners make two arguments that are purely legal and require no factual development. Petitioners argue that: (1) the Governor exceeded his authority by essentially vetoing Proposition 2, and (2) the rule excepting legislation from a referendum when it is passed by two-thirds of each house of the legislature should not apply to laws that originate with an initiative. In our discretion, we address these arguments below and deny them on the merits. *See Krejci v. City of Saratoga Springs*, 2013 UT 74, ¶ 10, 322 P.3d 662 ("The decision to grant or deny a petition for extraordinary writ is discretionary.").

¶20 We dismiss the remainder of the petition without prejudice for failure to comply with rule 19. Specifically, Petitioners did not show that "no other plain, speedy, or adequate remedy exists," or "why it is impractical or inappropriate to file the petition for a writ in the district court." UTAH R. APP. P. 19(b)(4)–(5).

## III. THE GOVERNOR DID NOT VETO PROPOSITION 2

¶21 Petitioners argue that the Governor exceeded his authority when he convened a special session of the legislature because, in doing so, he effectively vetoed Proposition 2 in violation of Utah Code section 20A-7-212(3)(a). That statute states that the "governor may not veto a law adopted by the people." UTAH CODE § 20A-7-212(3)(a).

¶22 But the Governor did not veto Proposition 2. The Governor's actions were limited to issuing a proclamation to convene a special session of the legislature. The Utah Constitution explicitly grants him this power. Article VII, section 6(1) of the Utah Constitution provides, in relevant part, that "[o]n extraordinary occasions, the Governor may convene the Legislature by proclamation, in which shall be stated the purpose for which the Legislature is to be convened."

¶23 The Governor's veto power is distinct from his power to convene a special session of the legislature. The veto power allows him to act alone, single-handedly blocking legislation. *See* UTAH CONST. art. VII, § 8(1). He could not and did not do that here. Proposition 2 was amended because two-thirds of both houses of the legislature voted for H.B. 3001. If the legislature had not done so, the Governor could not have acted alone to block or replace Proposition 2.

¶24 In short, the Governor exercised power that he is constitutionally authorized to exercise. He called for a special session of the legislature, which was then convened. But he did not exercise his veto power to single-handedly block Proposition 2.

## IV. THE TWO-THIRDS PROVISIONS APPLY HERE

¶25 After the legislature replaced Proposition 2 with H.B. 3001, Petitioners Maxfield, Newby, Grant, and Christie, as well as Lelia M. Grant, immediately filed with the Lieutenant Governor an application for a referendum. The Lieutenant Governor denied the application for two reasons: (1) because the

Lieutenant Governor determined that Petitioner Newby had not voted in a regular general election in Utah in the previous three years and therefore did not meet the requirements of Utah Code section 20A-7-302(2)(b)(ii), and (2) because H.B. 3001 passed by a two-thirds vote of both houses of the legislature.

¶26   Petitioners argue that the statutory and constitutional provisions precluding a referendum on laws passed by two-thirds of both houses of the legislature (Two-Thirds Provisions) should not apply to legislation that originated as a citizen initiative. And they argue that the statutory requirements to sponsor a referendum are unconstitutional. We first address their argument regarding the Two-Thirds Provisions.

¶27   Both the Utah Constitution and the Utah Code provide that laws passed by a two-thirds supermajority are not subject to a voter referendum. *See* UTAH CONST. art. VI, § 1(2)(a)(i)(B); UTAH CODE § 20A-7-102(2). Article VI, section 1(2)(a)(i)(B) of the Utah Constitution permits legal voters to "require any law passed by the Legislature, *except those laws passed by a two-thirds vote of the members elected to each house of the Legislature*, to be submitted to the voters of the State, as provided by statute, before the law may take effect." (Emphasis added.) Additionally, Utah Code section 20A-7-102(2) mirrors the constitutional Two-Thirds Provision, stating: "Utah voters may . . . require any law passed by the Legislature, except those laws passed by a two-thirds vote of the members elected to each house of the Legislature, to be referred to the voters for their approval or rejection before the law takes effect . . . ."

¶28   Petitioners argue that these Two-Thirds Provisions "can only be read as being designed to prevent a Citizen referendum on laws passed on legislation originally proposed and enacted by the Legislature in its normal and regular general session." And they further argue that the Two-Thirds Provisions cannot be applied to a citizen initiative "when the Legislature creates special powers for itself, without granting the same and equal right to the People." Accordingly, Petitioners contend that the Lieutenant Governor wrongly applied the Two-Thirds Provisions to a citizen initiative.

¶29   We first interpret the Two-Thirds Provision of the Utah Constitution. "The cardinal rule of constitutional interpretation is to begin with the plain language of the provision in question." *Univ. of Utah v. Shurtleff*, 2006 UT 51, ¶ 30, 144 P.3d 1109.

9

¶30 The plain language of article VI, section 1(2)(a)(i)(B) of the Utah Constitution contravenes Petitioners' arguments. It states that legal voters can "require any law passed by the Legislature, *except those laws passed by a two-thirds vote of the members elected to each house of the Legislature*, to be submitted to the voters of the State." (Emphasis added.) It does not contain language to suggest that the Two-Thirds Provision applies only to legislation "originally proposed and enacted by the Legislature." And it does not state that the law must be passed in a regular session. Rather, it simply refers to "any law passed by the Legislature." UTAH CONST. art. VI, § 1(2)(a)(i)(B). To limit this language to legislation that did not amend a citizen initiative, or that was passed only in a regular session, would be to add language to the text that is not there. That we cannot do. *See Krejci v. City of Saratoga Springs*, 2013 UT 74, ¶ 9, 322 P.3d 662 ("We cannot append additional conditions to the statutory framework by judicial fiat."); *see also* UTAH CONST. art. XXIII, § 1 ("Any amendment or amendments to this Constitution may be proposed in either house of the Legislature . . . ."). Petitioners have not made any legal or textual argument that compels reading our constitution differently than is dictated by its plain language.

¶31 The language in the Utah Code is nearly identical and is therefore subject to the same analysis. UTAH CODE § 20A-7-102(2) ("Utah voters may . . . require any law passed by the Legislature, except those laws passed by a two-thirds vote of the members elected to each house of the Legislature, to be referred to the voters for their approval or rejection before the law takes effect . . . .").

¶32 While the Utah Constitution creates and protects the voters' right to place legislation on the ballot for approval or rejection by the people, it also carves out an exception to that right. When both houses of the legislature pass legislation by a two-thirds supermajority, that law is not subject to a referendum.

¶33 As described above, H.B. 3001 was passed by the legislature. And both houses voted for the bill by a two-thirds supermajority. Accordingly, the Lieutenant Governor's decision that it was exempt from a referendum was correct.

¶34 Because this renders moot Petitioners' argument about the constitutionality of the statutory referendum sponsor requirements, we do not address it.

**CONCLUSION**

¶35   We deny on the merits Petitioners' arguments that the Governor effectively vetoed Proposition 2 and therefore exceeded his authority, and that the Two-Thirds Provisions of the Utah Constitution and Utah Code do not apply to legislation that amends an initiative. We dismiss the rest of the petition without prejudice, as it does not comply with rule 19 of the Utah Rules of Appellate Procedure. Because we dismiss the petition, we do not address the alternative grounds for dismissal advanced by Respondents.

———————