EDWARD R. FRENCH AND OCEAN CITY BUSINESS MEN'S ASSOCIATION, PROSECUTORS, v. THE BOARD OF COMMISSIONERS OF THE CITY OF OCEAN CITY, NEW JERSEY, AND E. R. MOOREHOUSE CO., A BODY CORPORATE, DEFENDANTS.

Argued January 22, 1947—Decided July 9, 1947.

Before CASE, CHIEF JUSTICE, and Justices HEHER and COLIE.

For the prosecutors, *Alexander Blatt*.

For the defendant Board of Commissioners of Ocean City, *John E. Boswell* and *Coulomb, McAllister & Hunter*.

The opinion of the court was delivered by

HEHER, J. The question here is whether there was a timely demand for the submission to the local electorate by referendum of an ordinance adopted by the governing body of the City of Ocean City on June 5th, 1946, providing for the construction, as a local improvement, of a concrete pave-

ment on West Avenue, with incidental improvements, and the issuance of bonds or notes to finance part of the construction cost. The maximum authorized cost of the improvements is $250,315, of which a maximum of $128,465 is assessable against the properties especially benefited by the improvements. The ordinance was published two days after final passage, with the statement prescribed by *R. S.* 40:1–19. On June 24th, 1946, nineteen days after final passage of the ordinance and seventeen days after its final publication, there were deposited with the municipal clerk certain petitions and postcards signed by taxpayers of the municipality, sufficient in character and content, so it is said, to call for the submission of the ordinance to the body of the voters by referendum in accordance with *R. S.* 40:49–9, 40:49:27 and 40:1–23. As to the time factor, the argument is that there is no conflict between these provisions and, at all events, section 40:1–23, *supra*, controls and the period limited for making "protest" under sections 40:49–9 and 40:49–27 is thereby extended from ten to twenty days. In a word, it is urged that the demand for a referendum may be made within twenty days after the passage of the ordinance. We take a different view.

These statutory provisions are not in conflict; they cover separate and distinct areas of legislative and judicial action. Sections 40:49–9 and 40:49–27 relate exclusively to the consummation of the legislative process, involving discretion and policy. Where the ordinance authorizes an "improvement" or the "incurring of any indebtedness, except for current expenses," it shall "become operative" ten days after the publication thereof, following final passage, unless within that period "a protest" against the making of the improvement or the incurring of the indebtedness, as the case may be, shall be filed with the municipal clerk, signed by taxpayers representing ten per cent. in amount of the assessed valuation of the municipality, whose names appear on the last preceding assessment roll, in which event the ordinance shall "remain inoperative" until ratified at a referendum election by a majority of the qualified voters participating therein. But section 40:1–23, read in the light of section 40:1–19, has

reference to "the twenty-day period of limitation" for the bringing of an action or proceeding to test the "validity" of a resolution or ordinance coming within the ambit of the local bond law, although we express no opinion as to the sufficiency of the provisions for that purpose. There is an obvious difference between an ordinance ineffective because still subject to a referendum at the instance of taxpayers and one beyond the legislative stage whose legal efficacy and sufficiency are the subject of challenge.

The history of the legislation shows that the lawmaking authority had this distinction in mind. It was made in chapter 252 of the laws of 1916, which was superseded by the Revision of 1935. *Pamph. L.* 1916, *p.* 525; *Pamph. L.* 1935, *p.* 186. See section 2 (3) of the act of 1916. *R. S.* 40:1–19 and 40:1–23 are re-enactments, respectively, of sections 210 and 214 of the Revision of 1935. Section 9 of the act of 1916, *supra,* contains a somewhat similar provision for a referendum, limited to boroughs and townships, if "a protest or protests" were made against the issuance of the bonds within ten days after publication of the ordinance; but by section 24 of article XXXVII of the "Home Rule Act" adopted the following year (*Pamph. L.* 1917, *pp.* 319, 461), the provision for a referendum on an ordinance authorizing an improvement or the incurring of indebtedness was made applicable to all municipalities, and this provision was incorporated in the Revision of 1937 as sections 40:49–9 and 40:49–27, *supra.* Obviously, this general provision of the Home Rule Act rendered unnecessary the like clause in the Revision of 1935 of the Local Bond Act. As we have seen, the Home Rule Act made provision for a referendum on improvement ordinances as well as ordinances creating indebtedness.

Repeals by implication are not favored in the law. The question is one of intention: and, in the absence of an express repealer, the indication of an intention to effect a repeal of prior legislation must be clear and compelling. There is a presumption against such an intention. *McNeely* v. *Woodruff,* 13 *N. J. L.* 352: *Eldridge* v. *Philadelphia and Reading Railway Co.,* 80 *Id.* 478; *Kuberski* v. *Hausser-*

*mann,* 113 *Id.* 162; *Hartman* v. *Board of Chosen Free-holders,* 127 *Id.* 170; *In re Huyler,* 133 *Id.* 171. If the provisions of the later and prior acts are reconcilable, effect must be given to both in their respective spheres. This rule has special application where, as here, the provisions are incorporated in a general revision of the laws.

In this view, we have no occasion to consider whether the "protest" was in form and content sufficient to invoke the cited referendum provisions. It was not interposed within the time prescribed by the statute.

The writ is accordingly dismissed, with costs.