ALL PEOPLES CONGRESS OF JERSEY CITY MARIA SANTOS, MONICA MOOREHEAD, ELIZABETH POOLE, ELIZABETH TINSLEY, RACHEL DUELL, WILLIAM SULLIVAN AND LESTER ROBINSON, PLAINTIFFS, v. MAYOR AND COUNCIL OF THE CITY OF JERSEY CITY, DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County

Decided February 24, 1984.

534

*Joseph Fortunato,* for plaintiffs.

*Robert E. Barry,* for defendants (*Joseph Healy,* Corporation Counsel for Jersey City, attorney).

YOUNG, J.S.C.

Plaintiffs challenge a rent-control ordinance which exempts from its provisions new, large apartment complexes constructed in redevelopment areas as violative of the doctrine which takes its name from the opinion known as *Mount Laurel II, So. Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp.,* 92 *N.J.* 158 (1983). Defendants, Mayor and Council of the City of Jersey City (hereinafter Mayor and Council) move for an order to dismiss the complaint in lieu of prerogative writs filed by the All Peoples Congress of Jersey City and named plaintiffs (hereinafter All Peoples Congress) described in the pleading as "a non-profit public service association" and residents of Jersey City, respectively.

A preliminary question, arising from the procedural history, requires review of the legality of the enactment of the challenged ordinance, designated ordinance MC–451. During the pendency of submission of an ordinance to public referendum, are the powers of a municipality to legislate on the same subject matter abrogated? *N.J.S.A.* 40:69A–184 *et seq.*

The subject matter of ordinance MC–451 is reflected in the title: "An Ordinance Amending and Supplementing Chapter 13 (Rent Controls) Article XX (Multiple Dwelling Rent Controls) of the Jersey City Code Exempting Dwellings Located Within Development Areas from Rent Controls." That ordinance was adopted September 21, 1983. The challenge is framed in six counts, several of which are repetitive in content. The counts allege, among other things, that the ordinance is in violation of

the Faulkner Act, more particularly the referendum provision, *N.J.S.A.* 40:69A–185 *et seq.;* that it is in violation of an order entered September 16, 1982 by Judge Thomas S. O'Brien, then assignment judge; that it is "inextricably linked to land use serving as a restrictive device discriminating against lower economic classes." The several prayers of relief ask judgment "adjudging the enactment of MC–451 unlawful"; "mandating that the Defendant enact a Master Plan," and finally, grant "such other relief as is consistent with the directions of the Supreme Court as expressed in the decision commonly referred to as *Mt. Laurel II,* 92 *N.J.* 158 (1983)."

The City Council adopted a prior ordinance on September 1, 1981, ordinance MC–20, a law also designed to control rents which included the concept of vacancy decontrol. Shortly after its enactment, a committee of petitioners submitted a referendum petition directed to that ordinance to the city clerk pursuant to the statute previously cited. After the submission of supplementary valid signatures, the city clerk certified the sufficiency of the petition January 25, 1982. However, before the question was placed before the electorate, the city council on April 22, 1982 passed on first reading ordinance MC–178 which repealed the provisions of the challenged ordinance MC–20. Mention is made in passing to ordinance MC–179 and ordinance MC–180, passed at the same session of the council, which Judge O'Brien noted "appear to be identical in language and content to MC–20." Although ordinances MC–179 and MC–180 were tabled at a subsequent session, plaintiffs point to them as evidence of a strategy of the municipality to frustrate resort to the referendum device.

Following the enactment of ordinance MC–178, the city clerk and the city council petitioned the court for instructions. Judge O'Brien agreed with the position advanced by the city council that the issue had become moot by virtue of the repeal of ordinance MC–20 and the adoption of ordinance MC–178.

In the present action, plaintiffs argue that the enactment of ordinance MC–451 "substantially re-enacts portions of the rescinded MC–20." In resolving the question presented, the guidelines applied by Judge O'Brien, which include reference to 5 *McQuillin, Municipal Corporations,* (3 ed. 1981), § 16.53 in the excerpt from the transcript of the oral opinion, are equally applicable to the pending litigation:

> Thus it has been said that the legislative body has no power to pass the same ordinance again or an ordinance in all essential features like the one against which the petition protested. This would plainly be to nullify the referendum provisions of the charter, but it is equally clear that the council is not prevented from legislating on the subject matter of the dead ordinance. [at 190]

A comparison of the pertinent provisions of ordinance MC–20 with those of ordinance MC–451 has been made by the court here set forth:

**Comparison of Ordinance MC–20 and Ordinance MC–451**

| ordinance MC–20 | ordinance MC–451 |
| --- | --- |
| 1. Exempted newly-constructed buildings in the entire city. | 1. Exempts only newly-constructed buildings of 25 units or more that are within a redevelopment area. |
| 2. Exempted buildings rented for the first time in the entire city. | 2. Exempts only buildings or structures, hotels, motels, or guest houses converted from any previous use as a nonpermanent dwelling on or after October 1, 1983. |
| 3. Permanently exempted all substantially rehabilitated dwellings. | 3. Does not change 1973 ordinance. |
| 4. Increased annual rental increase to 5% in all buildings of 8 to 19 units. | 4. Does not change 1973 ordinance. |
| 5. Discontinued use of the consumer price index. | 5. Does not change 1973 ordinance. |
| 6. Exempted upon vacation all dwellings of seven or less rental units. | 6. Does not change 1973 ordinance. |

| Ordinance MC–20 | Ordinance MC–451 |
|---|---|
| 7. Decontrolled, upon vacation, all rental units for the new tenant's initial rent. | 7. Does not change 1973 ordinance. |

Counsel for plaintiffs concedes that the comparison here set forth is accurate.

Under the Faulkner Act, an ordinance is suspended from taking effect until the referendum process had been completed. *N.J.S.A.* 40:69A–184, 185. *See Smith v. Livingston Tp.*, 106 *N.J.Super.* 444 (Ch.Div.1969). The same provision for suspension is provided by the general statute delegating powers to municipalities. *N.J.S.A.* 40:49–9. *See French v. Ocean City*, 136 *N.J.L.* 57 (Sup.Ct.1947). If a municipality repeals a challenged ordinance while the referendum proceedings are pending, it may not reenact the same ordinance, nor may it reenact the same or an ordinance in all essential features the same after referendum proceedings have been abandoned. Such action would plainly operate to nullify and circumvent the liberal and salutary design of the referendum device. However, the constitutionally vested, *N.J. Const.* (1947), Art. IV, § VII, par. 11, and the legislatively-granted power to make laws under both the Optional Municipal Charter Law, *N.J.S.A.* 40:69A–30 and the grant of general and regulatory powers, *N.J.S.A.* 40:48–1 *et seq.*, are not abrogated when an ordinance is the subject of the referendum power. If a municipal council acts in good faith and with no intent to evade the effect of a referendum petition, it may enact an ordinance covering the same subject matter provided the newly-enacted ordinance is essentially different from the challenged ordinance. 5 *McQuillin, Municipal Corporations, supra.*

It is the finding of this court that ordinance MC–451 enacted by the City Council of the City of Jersey City is neither

substantially the same as ordinance MC–20 nor does it attempt to substantially reenact the essential features of the repealed ordinance. Moreover, the adoption of ordinance MC–451 did not operate to impede resort to the power of referendum which relief was available to the petitioners.

The primary issue calls for a determination of the relevance of the opinion of the Supreme Court in *So. Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., supra,* more frequently referred to as *Mt. Laurel II,* as distinguished from *Mount Laurel I, So. Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp.,* 67 *N.J.* 151 (1975). More specifically, plaintiffs assert that ordinance MC–451, the subject matter of which by title and provisions deals with rent control, is "inextricably linked to land use serving as a restrictive device discriminating against lower economic classes." Plaintiffs conclude that *Mount Laurel II* creates a cause of action cognizable in the Law Division of the Superior Court. In answer, the Mayor and Council contend that this court lacks jurisdiction to hear plaintiffs' claims for relief under *Mount Laurel II* in that the Supreme Court has established a special panel of judges to hear *Mount Laurel* litigation, and point to the excerpts which follow drawn from that opinion:

> Any future *Mount Laurel* litigation shall be assigned only to those judges selected by the Chief Justice with the approval of the Supreme Court. The initial group shall consist of three judges, the number to be increased or decreased hereafter by the Chief Justice with the Court's approval. The Chief Justice shall define the area of the State for which each of the three judges is responsible: any *Mount Laurel* case challenging the land use ordinance of a municipality included in that area shall be assigned to that judge. [92 *N.J.* at 216].
>
> . . . .
>
> As noted above, following the release of this opinion the Chief Justice, with the approval of the Court, will name three judges (the number to be changed if necessary) who will thereafter handle all *Mount Laurel* litigation (except some of the cases before us now and except for other pending matters as to which transfer to those three judges will be at the direction of the Chief Justice). Each of these three judges will be exclusively responsible for a particular area of the state; any litigation challenging a land use regulation of a municipality

in that judge's area on *Mount Laurel* grounds shall be assigned to that judge. [*Id.* at 253–254].

The Chief Justice, with the approval of the Supreme Court, has named Superior Court Judge Stephen Skillman to be exclusively responsible for *Mount Laurel* litigation for the region which includes Hudson County.

Although a screening of the complaint raised the question whether or not it was one "challenging land use regulation of a municipality," there were forwarded to Judge Skillman all of the papers filed to date in this litigation. Judge Skillman rejected the case, the disposition here incorporated in this opinion:

> This will serve to confirm our telephone discussion of yesterday in which I indicated that I had reviewed the complaint and other materials which you forwarded to me in the above-captioned matter and had concluded that the case should not be transferred to me for handling since it involves an attack upon the validity of a rent control ordinance as distinguished from a zoning ordinance. If the complaint were to be amended to include a challenge to the zoning ordinance, I would want to review the matter further at that time.

■ This court determines that the *Mount Laurel II* doctrine is not applicable to the rent-control ordinance represented by ordinance MC–451. The *Mount Laurel II* doctrine is applicable to review the exercise of a municipality's constitutional power to zone, more particularly when the power is invoked to create exclusionary zoning. Exclusionary zoning is the mischief which both *Mount Laurel I* and *Mount Laurel II* were designed to remedy. Indeed, an analysis of the *Mount Laurel II* opinion discloses that its *lietmotif* is the scope of the exercise of the power to zone. The essence of the opinion is stated in the passage here quoted:

> That is the constitutional rationale for the *Mount Laurel* doctrine. The doctrine is a corollary of the constitutional obligation to zone only in furtherance of the general welfare. The doctrine provides a method of satisfying that obligation when the zoning in question affects housing. [92 *N.J.* at 209].

■ The issues which emerge from municipal power to control rents are separate and distinct from issues associated with

land use as affected by the zoning power. See *Inganamort, et al. v. Fort Lee Bor., et al.*, 62 *N.J.* 521 (1973), app. after remand, 72 *N.J.* 412 (1977), for an exposition of the constitutionality of the power of municipalities to control rent either under the "general welfare" statute, *N.J.S.A.* 40:48–2 or the Optional Municipal Charter Law, *N.J.S.A.* 40:69A–30, the police power. Plaintiffs' assault upon the rent-control ordinance in question by resort to the *Mount Laurel II* doctrine would project that doctrine beyond its stated parameters. That effort is reflected in counsel's selective references to the Supreme Court opinion represented by the paragraph here quoted:

> Every municipality's land use regulations should provide a realistic opportunity for decent housing for at least some part of its resident poor who now occupy dilapidated housing. The zoning power is no more abused by keeping out the region's poor than by forcing out the resident poor. In other words, each municipality must provide a realistic opportunity for decent housing for its indigenous poor except where they represent a disproportionately large segment of the population as compared with the rest of the region. This is the case in many of our urban areas. [92 N.J. at 214–215].

Included in the paragraph quoted is the reiteration of the essential ingredient for invoking the *Mount Laurel II* doctrine, namely the exercise of the zoning power. The exercise of that power is absent from the pending litigation. It is not for the trial court to project the reach of the *Mount Laurel II* doctrine to rent-control laws. Therefore, the allegations in the complaint based upon the *Mount Laurel II* opinion do not give rise to a cause of action.

On the authorities cited and the reasoning set forth, together with recognition of the disposition by Judge Skillman of the referral made to that special court, the motion of the defendants, Mayor and Council of the City of Jersey City for an order to dismiss the complaint in lieu of prerogative writs filed by the All Peoples Congress of Jersey City and the named individual plaintiffs is granted.