2004 UT 68

Janeen CARPENTER, L. Andrew Gibson, Jr., David Hogue, Becky Hogue, Gwendolyn Mulks, Amy Murray, Curtis Muhlestein, Lori Muhlestein, Scott Peterson, Dennis Sampson, Michelle Sampson, Von Taylor, Lynda Taylor, Stacie Woolley, Wilson Svedin, Petitioners,

v.

RIVERTON CITY, a Utah municipal corporation, Respondent.

Cletus R. Hamilton and Sharon Lee Hamilton, Intervenors.

No. 20040448.

Supreme Court of Utah.

Aug. 20, 2004.

James K. Tracy, Colin McMullin, Salt Lake City, for petitioner Dennis Sampson, all other petitioners pro se.

David L. Church, Salt Lake City, for respondent.

John P. Ashton, Allen Sims, for intervenors.

PER CURIAM:

¶ 1 Before the court is a petition for extraordinary relief challenging Riverton City's refusal to place a referendum seeking repeal of a zoning ordinance on the ballot. The petition was filed by Janeen Carpenter, L. Andrew Gibson, Jr., David Hogue, Becky Hogue, Gwendolyn Mulks, Amy Murray, Curtis Muhlestein, Lori Muhlestein, Scott Peterson, Dennis Sampson, Michelle Sampson, Von Taylor, Lynda Taylor, Stacie Woolley, and Wilson Svedin. After the petition was filed, Dennis Sampson obtained legal counsel and filed a supplemental memorandum in support of the petition. Cletus R. Hamilton and Sharon Lee Hamilton, property owners of the land at issue, were granted permission to intervene to defend their interests. After accepting further responsive pleadings to the supplemental memorandum, this court conducted oral argument on July 19, 2004. At the hearing, Mr. Sampson, Riverton City, and the Hamiltons expressed their views and arguments. Additionally, two of the pro se petitioners, Scott Peterson and State Representative David Hogue, addressed the court.

¶ 2 The underlying dispute arises from the "Hamilton Properties Specific Plan," a comprehensive development agreement between Riverton City and Hamilton Land L.L.C. pertaining to large tracts of land owned by the latter. The Specific Plan set forth in detail the establishment of commercial and residential development on those tracts. In January of this year, the Riverton City Council enacted ordinance 1–3–04–1 (the January Ordinance), which expressly adopted the Specific Plan as the zoning requirements for the tracts it described. The Specific Plan and the January Ordinance encountered significant public opposition. Opponents voiced objections to the authority of the "lame duck" Council (three members of which were soon to be replaced), and complained there was a lack of adequate notice and citizen input. They also claimed the Specific Plan violated Riverton City's General Plan in a number of respects and provided for development that would adversely impact surrounding neighborhoods. A lawsuit was initiated

in district court. A group of citizens also commenced a petition for a referendum on the January Ordinance and obtained the required number of signatures.[1] However, in May, following further hearings, the Council repealed ordinance 1–3–04–1 and enacted four new ordinances, 5–4–04–1 through –4 (the May Ordinances). The Riverton City Recorder notified petitioners that because the subject ordinance had been repealed, the referendum would not be placed on the ballot. The above-named petitioners filed the instant request for extraordinary relief. Additionally, petitioners began a new referendum process by seeking signatures to challenge each of the four new ordinances.[2]

¶ 3 While petitioners have phrased their requests for relief in several different forms, the essential remedy they seek is a declaration that the referendum challenging the January Ordinance be deemed applicable to the May Ordinances. Riverton City and the Hamiltons respond by asking this court to declare the referendum challenge moot because it applies to an ordinance that has been repealed.

¶ 4 We begin our analysis by clarifying the scope of this court's review of petitions for extraordinary relief. Article VIII, section 3 of the Utah Constitution provides general authority to grant petitions for extraordinary writ. *See also* Utah Code Ann. § 78–2–2; Utah R.App. P. 19. This authority is discretionary and limited to circumstances where there is no other "plain, speedy, or adequate remedy." Utah R.App. P. 19(b)(4); *see also* Utah R. Civ. P. 65B. In addition to the general restrictions governing the availability of extraordinary relief, this court typically limits itself to addressing only those petitions that cannot be decided in another forum.[3] *See* Utah R.App. P. 19(b)(5) (requiring petitioner "except in cases where the writ is directed to a district court" to provide "a statement explaining why it is impractical or inappropriate to file the petition for a writ in the district court"). This latter limitation becomes particularly significant in circumstances where the petition is presented on hotly disputed material allegations of fact and there is no record below to aid this court in resolving those disputes. Because this court does not conduct evidentiary hearings (except in those rare circumstances in which reference to a special master is deemed appropriate), it simply is not in a position to arrive at a legal ruling that is dependent on the resolution of disputed facts.

¶ 5 Indeed, the determination of whether this court may adjudicate a petition is not unlike a district court's decision to grant summary judgment. Where a petition is presented on uncontroverted material facts (e.g., by stipulation or unopposed affidavits), and it is otherwise appropriate for this court to exercise its jurisdiction to issue extraordinary relief, it may issue a judgment on the merits. Conversely, where a petitioner is unable to meet the requirement of an undisputed basis for issuing the relief requested, the petition generally should not be brought in this court in the first instance.

¶ 6 In this case, the parties generally agree on certain core facts. The May Ordinances subdivide the land previously subject to the January Ordinance and treat each of those tracts as a separate zoning decision. The zoning changes applicable to each of the tracts in the May Ordinances are more flexible than those set forth in the January Ordinance, at least insofar as the tracts have been subdivided and the Specific Plan is not explicitly treated as the source and description of the specific zoning changes. The May Ordinances acknowledge the Specific Plan, the zoning changes set forth in the May Ordinances are consistent with that plan, and those zoning changes could produce the same result as the January Ordinance unless Riv-

---

1. Petitioners maintain they collected nearly twice the number of signatures required by statute.

2. According to the representations of Sampson's counsel at oral argument, the signatures have been collected and submitted to Riverton City for certification.

3. We note that section 20A–7–607(4)(a) of the Utah Code—providing that "[i]f the local clerk refuses to accept and file any referendum petition, any voter *may* apply to the Supreme Court for an extraordinary writ to compel [the clerk] to do so within ten days after the refusal" (emphasis added)—is permissive in nature and does not designate this court as the exclusive location where relief may be sought.

erton City and the developers agree to diverge from the plan.

¶ 7 However, the parties' interpretations of the City Council's *motivation* for repealing the January Ordinance and enacting the May Ordinances differ significantly. Riverton City and the Hamiltons assert the actions were taken for two primary purposes. First, a new Council had been convened to replace the "lame duck" Council that had enacted the January Ordinance, and new hearings were conducted in an attempt to cure the alleged procedural defects attending the January Ordinance. Second, the May Ordinances provide more flexibility in their specific application because each of the four tracts could be addressed individually and, where the zoning requirements were set forth independently from the Specific Plan, that plan would not necessarily govern each individual aspect of the development.

¶ 8 Petitioners, on the other hand, maintain the Council undertook the repeal of the January Ordinance and the enactment of the May Ordinances for the primary purpose of circumventing their rights to override municipal legislation by referendum. They argue that the zoning changes in the May Ordinances are still referenced to the Specific Plan, that the Council deems itself contractually bound by that plan, and that the May Ordinances in the aggregate will attain precisely the same end as the January Ordinance would have accomplished by itself.

¶ 9 The parties also generally agree on the governing precedent, but interpret its import quite differently in the context of this case. In particular, two early cases issued by this court, *Keigley v. Bench,* 90 Utah 569, 63 P.2d 262 (1936), and *Utah Power & Light Co. v. Ogden City,* 95 Utah 161, 79 P.2d 61 (1938), are relevant.[4] Both cases generally addressed the authority of municipalities to repeal or amend ordinances that had been challenged by referendum. Additionally, *Ogden City* cited with approval the cases of *Ginsberg v. Kentucky Utilities Co.,* 260 Ky. 60, 83 S.W.2d 497, 501 (1935); *McBride v. Kerby,* 32 Ariz. 515, 260 P. 435, 441 (1927); *Ex Parte Statham,* 45 Cal.App. 436, 187 P. 986, 988 (1920); and *In re Megnella,* 133 Minn. 98, 157 N.W. 991, 992–93 (1916); *see also All Peoples Congress of Jersey City v. Mayor & Council of Jersey City,* 195 N.J.Super. 532, 480 A.2d 948, 951 (Ct. Law Div.1984). The key question discussed by these cases is a local government's good faith or, in other words, whether the local government's purpose in revisiting a law that has been challenged by referendum is to evade that referendum.[5]

¶ 10 Where the governing standard focuses on the purpose and intent of the local government's decision to repeal and replace an ordinance challenged by referendum, this court is not in a position to resolve the key factual disputes concerning the motivations of the Riverton City Council. Accordingly, petitioners have failed to meet their burden of demonstrating with undisputed allegations of

4. In the alternative, petitioners cite to decisions in certain states that have at one time or another simply presumed that a similar or identical ordinance was enacted with the purpose of evading a referendum. *See, e.g., Jackson v. Denver Producing & Refining Co.,* 96 F.2d 457, 461 (10th Cir. 1938) (construing Oklahoma law); *State v. Becker,* 240 S.W. 229, 231–32 (Mo.1922). We decline to adopt such a standard, particularly where our prior cases have explicitly authorized repeal or amendment under certain circumstances, and where the legislature has not expressly indicated that any particular stage in the referendum process should impose paralyzing consequences on the continuing business of government.

5. Notably, the cases cited in *Ogden City* (and the standards they propound) do not address certain factors that may be relevant to a determination of a local government's purpose. For example, at least some of the objections voiced by certain opponents of the January Ordinance concerned alleged failures to comply with statutory notice requirements and a lack of legitimacy flowing from the "lame duck" Council's decision. On those grounds, it arguably was entirely appropriate for the new Council to revisit the earlier decision for the purpose of curing procedural defects and maintaining the appearance of elected officials' responsibility to constituents. In that regard, the standards articulated by the cases cited in *Ogden City* are too narrow, insofar as they limit their treatment to the similarity between repealed and subsequent provisions. The degree to which a new measure resembles the old in its essential features will be a significant relevant factor in ascertaining the local government's purpose, but because the substantive result of local legislation is not the only basis for a referendum challenge, that particular factor will not always be determinative.

fact that the Riverton City Council acted in bad faith, and we therefore dismiss the petition.

¶ 11 Having disqualified himself, Justice NEHRING does not participate herein; Court of Appeals Judge RUSSELL W. BENCH sat.