**2021 UT 46**

IN THE
**SUPREME COURT OF THE STATE OF UTAH**

WHITNEY CROFT, ROBERT BOHMAN, BRANDON PETERSON, SHELLEY
PAIGE, and DAVID PIKE,
*Appellants*,
*v.*
MORGAN COUNTY and STACY NETZ CLARK, solely in her official
capacity as Morgan County Clerk,
*Appellees*,

and
WASATCH PEAKS RANCH, LLC,
*Intervenor and Appellee.*

No. 20200373
Heard May 10, 2021
Filed August 12, 2021

On Direct Appeal

Second District, Morgan County
The Honorable Noel S. Hyde
No. 190500095

Attorneys:
Troy L. Booher, Beth E. Kennedy, Taylor P. Webb, Salt Lake City,
Richard H. Reeve, Riverdale, for appellants

Jann Farris, Morgan, for appellees Morgan County and Stacy Netz
Clark
Mark R. Gaylord, Nathan R. Marigoni, Salt Lake City, for
intervenor/appellee Wasatch Peaks Ranch, LLC

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE
PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1     Appellants are registered voters and residents of Morgan
County who filed an application to submit an ordinance
approving the development of a ski resort community to a
referendum. After the County Clerk rejected the referendum

application, appellants challenged the county's decision in the district court. The district court dismissed their challenge for lack of jurisdiction based on its reading of Utah Code section 20A-7-602.8(4)(a), which allows a sponsor to challenge such a rejection in the district court if the sponsor is "prohibited from pursuing" an extraordinary writ in the Supreme Court. The district court reasoned that appellants were not "prohibited" from pursuing an extraordinary writ in this court but, instead, had simply declined to do so.

¶2     We disagree. The district court erred in its interpretation of section 602.8(4)(a) and in its conclusion that it lacked jurisdiction. We conclude that rule 19 of the Utah Rules of Appellate Procedure informs our interpretation of the statute. Specifically, we hold that sponsors are "prohibited from pursuing" an extraordinary writ in the Supreme Court under section 602.8(4)(a) when they cannot satisfy rule 19's requirements. Appellants could not do so here and thus appropriately raised their challenge in the district court. Accordingly, we reverse and remand for further proceedings in the district court.

## BACKGROUND

¶3     Wasatch Peaks Ranch, LLC (WPR) seeks to develop a ski resort community in Morgan County. To this end, WPR submitted to the County's planning office a rezoning application requesting the creation of a Resort Special District encompassing 11,000 acres of private land within the County. Approximately six months later, the County adopted an ordinance approving the requested rezoning and a development agreement between WPR and the County.

¶4     Appellants are registered voters residing in Morgan County. Unhappy with the new ordinance, they filed with the County Clerk an application for a citizen referendum of the matter. The County Clerk rejected the application because it did not contain a "certification" that each sponsor is a resident of Utah or a copy of the challenged ordinance, as required under Utah Code section 20A-7-602(2)(b) and (e) (2020).[1]

_____

[1] The legislature recently amended section 602 to no longer require a "certification indicating that each of the sponsors is a resident of Utah." 2021 Utah Laws ch. 140, § 43 (H.B. 211). Instead, the statute now requires, in relevant part, that an application for a

(continued . . .)

¶5    Appellants then filed in the district court a petition challenging the rejection of their proposed referendum. WPR made a motion to intervene, which the court granted.

¶6    WPR moved to dismiss for lack of jurisdiction or, in the alternative, for summary judgment on the merits.[2] WPR's jurisdictional argument relied on Utah Code section 20A-7-602.8(4)(a), which provides that a sponsor of a rejected referendum may "challenge or appeal the decision" within seven days to "(i) the Supreme Court, by means of an extraordinary writ, if possible; or (ii) a district court, if the sponsor is prohibited from pursuing an extraordinary writ under Subsection (4)(a)(i)." WPR argued this statute permits a referendum sponsor to assert their challenge in district court only if they show that they are "prohibited from pursuing" an extraordinary writ in the Supreme Court. Because appellants' petition made no such showing, WPR contended, the district court was without jurisdiction to hear their challenge.

¶7    The district court agreed with WPR. It determined that subsection 602.8(4)(a) "is not a general grant of jurisdiction to the district court" but instead grants the district court "conditional" jurisdiction. That condition, the court reasoned, "is met only where the sponsor has been prohibited from pursuing a writ" in the Supreme Court. And because appellants presented "no factual or legal argument suggesting that pursuit of an extraordinary writ would be or was impossible," the court concluded it was without jurisdiction.

---

local referendum petition must include "the name and residence address of at least five sponsors of the referendum petition" and "a statement indicating that each of the sponsors is registered to vote in Utah." UTAH CODE § 20A-7-602(2). However, given the absence of any argument for retroactive application, we "cite to the version of the statute that was in effect at the time of the events giving rise to [the] suit." *Scott v. Scott*, 2020 UT 54, ¶ 1 n.1, 472 P.3d 897 (alteration in original) (citation omitted) (internal quotation marks omitted).

[2] "When reviewing a rule 12(b)(6) motion to dismiss, we accept the factual allegations in the complaint as true and interpret those facts, and all reasonable inferences drawn therefrom, in a light most favorable to the plaintiff as the nonmoving party." *Olguin v. Anderton*, 2019 UT 73, ¶ 4 n.3, 456 P.3d 760 (citation omitted).

¶8    The district court granted WPR's motion to dismiss for lack of jurisdiction. Appellants timely appealed. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶9    "The grant of a motion to dismiss presents a question of law that we review for correctness." *Haik v. Jones*, 2018 UT 39, ¶ 9, 427 P.3d 1155.

## ANALYSIS

¶10    Appellants appeal the district court's dismissal of their challenge for lack of jurisdiction under Utah Code section 20A-7-602.8(4)(a). WPR responds that the dismissal was appropriate or, in the alternative, that we can affirm on the basis that appellants' referendum application was deficient as a matter of law.

¶11    We first address the jurisdictional question. Finding the statute ambiguous on its face, we employ additional tools of statutory construction and conclude that they disfavor WPR's proffered reading of the statute. We then explain how the correct approach is to read the statute in harmony with rule 19 of our Rules of Appellate Procedure. And we hold that a sponsor of a denied referendum application may seek relief in the district court if it cannot satisfy rule 19's requirements for obtaining an extraordinary writ in this court. Because appellants could not have satisfied those requirements here, they properly filed their challenge in the district court. We thus reverse the district court's dismissal for lack of jurisdiction.

¶12 Second, we briefly address WPR's arguments for summary judgment on the merits in the alternative. We conclude that we are not well positioned to adequately decide these issues and remand them to the district court for further proceedings.

### I. THE DISTRICT COURT ERRED IN CONCLUDING IT LACKED JURISDICTION

¶13    The primary question we must answer on appeal is where the sponsor of a rejected referendum application concerning a local land use law can challenge that rejection. Utah Code section 20A-7-602.8(4)(a) provides:

> If a county, city, town, or metro township rejects a proposed referendum concerning a land use law, a sponsor of the proposed referendum may, within seven days . . ., challenge or appeal the decision to:
> > (i) the Supreme Court, by means of an extraordinary writ, if possible; or

4

(ii) a district court, if the sponsor is prohibited from pursuing an extraordinary writ under Subsection (4)(a)(i).

The parties dispute the meaning of when a sponsor might be "prohibited from pursuing an extraordinary writ" in this court and, relatedly, when raising a challenge in this court is "possible."

¶14 We agree with appellants that rule 19 provides the answer. First, we conclude that the language of section 602.8(4)(a) is ambiguous because it does not identify when a sponsor might be "prohibited from pursuing" an extraordinary writ in this court or when raising a challenge in this court is "possible." Second, we apply two relevant canons of statutory interpretation and determine they disfavor WPR's interpretation of the statute. Third, we explain that the correct reading of section 602.8(4)(a) is to interpret the statute in harmony with rule 19 and our case law interpreting similar statutes. In so doing, we hold that a sponsor of a rejected referendum may challenge the rejection in the district court unless it is "impractical or inappropriate" to do so. *See* UTAH R. APP. P. 19(b)(5). Finally, we hold that it would not have been "impractical or inappropriate" for appellants to seek relief in the district court, and thus jurisdiction there was proper.

*A. Section 602.8(4)(a) Is Ambiguous*

¶15 "Our object in interpreting a statute is to determine the intent of the legislature." *Kamoe v. Ridge*, 2021 UT 5, ¶ 15, 483 P.3d 720. To do so, we first look to the text of the statute and seek to interpret it "in harmony with other statutes in the same chapter and related chapters." *Id.* (citation omitted). "If, after conducting this plain language review we are left with competing reasonable interpretations, there is statutory ambiguity." *Id.* (citation omitted).

¶16 To discern the legislature's intended meaning of section 602.8(4)(a), we must identify when it is "possible" to obtain, and when a sponsor of a rejected referendum would be "prohibited from pursuing," an extraordinary writ in this court. UTAH CODE § 20A-7-602.8(4)(a). The statute itself does not answer these questions. These terms are not defined or otherwise explained in section 602.8(4)(a), elsewhere in the Election Code, or in any other related chapter of the Utah Code.

¶17 To determine the meaning of "possible" and "prohibited from pursuing," "we look to the ordinary meaning of the words, using the dictionary as our starting point." *State v. Hatfield*, 2020 UT 1, ¶ 17, 462 P.3d 330 (citation omitted). *Possible* is an adjective

typically used one of two ways: either to express an ability to do something or to express a chance of something occurring. *See, e.g., Possible*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/possible (last visited Aug. 4, 2021) ("being within the limits of ability, capacity, or realization"; "being something that may or may not occur"); *Possibility*, BLACK'S LAW DICTIONARY (11th ed. 2019) (substantially similar). *Prohibit*, on the other hand, more singularly means to prevent or forbid something altogether. *See, e.g., Prohibit*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/prohibit (last visited Aug. 4, 2021) ("to forbid by authority"; "to prevent from doing something"); *prohibit*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. To forbid by law. 2. To prevent, preclude, or severely hinder.") Finally, *pursue*, as used in the statute, means essentially to take affirmative actions to seek or obtain something. *See, e.g., Pursue*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/pursue (last visited Aug. 4, 2021) ("to find or employ measures to obtain or accomplish: SEEK"); *Pursue*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To try persistently to gain or attain; to seek").

¶18 Given this set of definitions, both appellants' and WPR's interpretations of section 602.8(4)(a) are plausible. Under appellants' reading of the statute, rule 19 may "prohibit" a sponsor from "pursuing" an extraordinary writ in this court because it provides requirements for an *application* (also called a petition) to obtain such a writ. *See* UTAH R. APP. P. 19(a). Specifically, rule 19 requires a petition for extraordinary writ to contain a statement explaining "why no other plain, speedy, or adequate remedy exists" and "why it is impractical or inappropriate" to seek relief in the district court. *Id.* 19(b)(4)–(5). So, appellants reason, one cannot take affirmative steps to seek or obtain an extraordinary writ if one cannot meet the threshold requirements of the first step. Further, under appellants' reading, obtaining an extraordinary writ in this court is not "possible" if rule 19 cannot be met because there is neither ability nor capacity to obtain that writ.

¶19 WPR responds that rule 19 does not prohibit a sponsor from pursuing an extraordinary writ but instead "merely contains a requirement that must be included when the writ is pursued." In other words, a sponsor is not "prohibited from pursuing" an extraordinary writ in this court so long as they can physically file a petition for that writ, even if the petition is doomed to fail. And, WPR reasons, the statute "*requires* appeal by extraordinary writ to

this Court" if the sponsor cannot identify such a condition. Further, WPR argues that so long as one can "pursu[e]" such a writ within their interpretation, "challenge or appeal" to this court is "possible" because we have discretionary authority to grant any such writ.

¶20   In sum, appellants' interpretation of the statute focuses on when a sponsor would be *practically* prohibited from pursuing an extraordinary writ in this court and when such a writ would be *practically* possible to obtain. WPR takes a more literal approach, focusing instead on when a sponsor would be *categorically* prohibited from pursuing a writ and when obtaining a writ would be *technically* impossible. Both of these interpretations are plausible. And both look beyond the Election Code and related statutes to give meaning to the operative statutory language. Accordingly, we conclude that the statute is ambiguous.

### B. WPR's Interpretation Is Problematic

¶21   To resolve this statutory ambiguity, we next apply two established canons of statutory interpretation. These interpretive tools "are not formulaic, dispositive indicators of statutory meaning" but merely "guide our construction of statutes in accordance with common, ordinary usage and understanding of language." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 19, 248 P.3d 465. But when multiple interpretive tools all point to the same result, they provide strong support to favor or disfavor a certain interpretation of a statute. Here, the canons of constitutional avoidance and surplusage cut against WPR's suggested reading of section 602.8(4)(a).

1. WPR's interpretation is constitutionally troublesome

¶22   When possible, we interpret a statute in a way that is not constitutionally problematic. *See Castro v. Lemus*, 2019 UT 71, ¶ 54, 456 P.3d 750. The canon of "[c]onstitutional avoidance rests on the reasonable presumption that where there is more than one plausible interpretation of a statute, the legislature did not intend the [interpretation] which raises serious constitutional doubts." *Hatfield*, 2020 UT 1, ¶ 39 (second alteration in original) (citation omitted) (internal quotation marks omitted). Here, the canon cuts against WPR's suggested construction of section 602.8(4)(a).

¶23   Article VIII, section 3 of the Utah Constitution vests in this court "original jurisdiction to issue all extraordinary writs." This power "cannot be enlarged or abridged by the Legislature." *State ex rel. Robinson v. Durand*, 104 P. 760, 763 (Utah 1908). Article

VIII, section 3 also vests in this court "appellate jurisdiction . . . as provided by statute." UTAH CONST. art. VIII, § 3.

¶24   Our constitutional analysis hinges on which of these two provisions—original jurisdiction to issue extraordinary writs or appellate jurisdiction as provided by statute—is applicable here. Section 602.8(4)(a) purports to allow sponsors to raise their "challenge or appeal" by seeking an extraordinary writ in the Supreme Court. On one hand, the statute may be an improper "enlarge[ment]" of our "original jurisdiction to issue all extraordinary writs." On the other hand, the statute may be a permissible legislative prescription of our "appellate jurisdiction." This distinction turns on whether the challenge is an "appeal" in a traditional jurisdictional sense.

¶25   Rather than relying on the legislature's chosen labels to resolve this tension, we look to the nature of the "challenge or appeal" as provided by section 602.8(4)(a). *Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544, 565 (2012) (explaining that "Congress cannot change whether an exaction is a tax or a penalty for *constitutional* purposes simply by describing it as one or the other" or by using "[m]agic words" (citation omitted)). "In general, when we refer to 'appellate jurisdiction,' we have spoken in terms of the authority established in the Utah Constitution or by statute of the appellate court to review the decision of a lower court." *A.S. v. R.S.*, 2017 UT 77, ¶ 35 n.12, 416 P.3d 465. Here, the challenged proceeding—the decision of a "local clerk" to accept or reject a local referendum application, UTAH CODE § 20A-7-607(2)(b)—is not "the decision of a lower court." Nor does it bear any features common to a typical judicial "appeal." It carries none of the hallmarks of due process such as notice, hearing, and opportunity for adverse argument. In this case, it was merely a letter submitted to, and summarily rejected by, the County Clerk. Further, the reviewing court is not tasked with reviewing an established record for mistakes of law—the "challenge" is essentially *de novo*. For these reasons, a "challenge or appeal" under section 602.8(4)(a) is not an appeal in the jurisdictional sense and thus does not fall within this court's "appellate jurisdiction" as provided by article VIII, section 3.[3]

_____

[3] In addition to "decision[s] of a lower court," we also have appellate jurisdiction over "final orders and decrees in formal adjudicative proceedings" from certain administrative agencies and "final orders and decrees of the district court review of

(continued . . .)

¶26 Having decided that section 602.8(4)(a) does not implicate our "appellate jurisdiction," we must consider whether WPR's interpretation of the statute intrudes upon our "original jurisdiction to issue all extraordinary writs." *See* UTAH CONST. art. VIII, § 3. Fortunately, we already answered a substantially similar question in *Brown v. Cox*, 2017 UT 3, ¶ 13, 387 P.3d 1040.

¶27 In *Cox*, we addressed a similar provision of the Election Code that "purport[ed] to extend this court's original jurisdiction to include multi-county election contests" by requiring registered voters to file a verified written complaint with this court in disputing the results of a primary election that included multiple counties. *Id.* ¶ 12 (citing UTAH CODE § 20A-4-403(2)(a)). Appellant Brown asked this court to adopt "a liberal view of the Legislature's power to grant Supreme Court jurisdiction." *Id.* ¶ 13. We declined his invitation, instead holding that, under our well-established precedent, article VIII, section 3 "does not grant the Legislature authority to alter our original jurisdiction." *Id.*

¶28 Although WPR does not cite *Cox*, it attempts to distance its proffered interpretation of section 602.8(4)(a) from the statute at issue in *Cox*. True, the statute in *Cox* mandated that a voter challenging the results of a primary election "shall contest" the results "by filing a verified written complaint . . . with . . . the Utah Supreme Court." *Id.* ¶ 12 (alterations in original) (quoting UTAH CODE § 20A-4-403(2)(a)). Whereas section 602.8(4)(a) provides that a sponsor "may . . . challenge or appeal" a rejected referendum to "the Supreme Court, by means of an extraordinary writ, if possible." WPR essentially argues that this language of section 602.8(4)(a) does not require the Supreme Court to issue such a writ but only requires a sponsor to apply for one.

---

informal adjudicative proceedings" of those same agencies. UTAH CODE § 78A-3-102(3)(e)–(f). However, a challenge under section 602.8(4)(a) is not such an administrative appeal, either. A county clerk does not fall within the enumerated agencies, the sponsor is not appealing a district court review of an administrative decision, nor would we consider the rejection of a referendum application a "formal adjudicative proceeding." *See S. Utah Wilderness All. v. Bd. of State Lands & Forestry*, 830 P.2d 233, 236 (Utah 1992) (explaining that "formal" administrative proceedings involve "fuller discovery and fact finding," resulting in "an adequate record for review").

¶29 Any distinction between the statute in *Cox* and WPR's interpretation of section 602.8(4)(a) makes little difference. While we have never decided if a legislative requirement to *seek* an extraordinary writ offends article VIII, section 3, we certainly have our doubts as to the constitutionality of such a requirement. If WPR is unable to point to any prohibition on pursuing a writ sufficient to allow a sponsor to seek relief in the district court under subsection 602.8(4)(a)(ii), then their reading of the statute effectively makes an extraordinary writ in the Supreme Court a sponsor's *only* remedy. Even if WPR could identify such a prohibition, the statute's tight filing deadlines would then leave the sponsor stuck without a remedy if this court were to deny their petition for extraordinary writ (unless the sponsor had the foresight to file petitions in both the Supreme Court and district court). The practical effect of WPR's interpretation of 602.8(4)(a) is analogous to that of the *Cox* statute, which provided that a party "shall contest" a matter in the Supreme Court. The legislature cannot make an end-run around our original jurisdiction to issue extraordinary writs by requiring that a party seeking judicial relief first file for an extraordinary writ in this court while also providing that the party will be effectively without relief if we were to deny their petition. Such a requirement would put a heavy legislative thumb on our discretionary scale to issue extraordinary writs. *See State v. Barrett*, 2005 UT 88, ¶ 23, 127 P.3d 682 ("[A] petitioner seeking . . . extraordinary relief has no right to receive a remedy . . . . [W]hether relief is ultimately granted is left to the sound discretion of the court hearing the petition.").

¶30 The bottom line is this. Section 602.8(4)(a) requires a sponsor to raise its challenge in "the Supreme Court, by means of an extraordinary writ, if possible." And if WPR were correct that the meaning of "if possible" is not informed by rule 19 but instead by some other procedure outside of this court's control, then the statute would amount to a legislative attempt to regulate our jurisdiction to issue extraordinary writs. Yet this court has rejected similar attempts for over a century, from *State ex rel. Robinson v. Durand* to *Brown v. Cox*.

¶31 We avoid this thorny territory of possible unconstitutionality by employing the canon of constitutional avoidance. Here, as already explained, WPR's proffered interpretation of section 602.8(4)(a), while plausible, may offend our sole constitutional authority to regulate the issuance of extraordinary writs. Such interference with our original jurisdiction raises "serious constitutional doubts." Accordingly, we presume the legislature did not intend that any sponsor

challenging a rejected referendum application seek an extraordinary writ in this court, regardless of our established requirements for actually obtaining such a writ.

2. WPR's interpretation would render subsection 602.8(4)(a)(ii) meaningless

¶32 The surplusage canon similarly cuts against WPR's interpretation of section 602.8(4)(a). It provides that "[i]f possible, every word and every provision [of a statute] is to be given effect." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012). The canon rests on the presumption that the legislature did not intend to "adopt a nullity." *Lancer Ins. Co. v. Lake Shore Motor Coach Lines, Inc.*, 2017 UT 8, ¶ 13, 391 P.3d 218.[4]

¶33 To be clear, the canon of surplusage establishes only a *presumption* that statutory language be given operative effect. It is not a bright-line rule. We have recognized that "[l]egislation may include surplus terms aimed at underscoring an important point." *Id.* ¶ 14. But the presumption is much more difficult to overcome when it would render an entire statutory provision meaningless. "Where that is the case the presumption . . . is at its strongest" because we are reluctant to presume the legislature would enact a statutory provision "that has no operative effect." *Id.*

¶34 Below, the district court proposed that some other "rule[] or statute" might prohibit a sponsor from pursuing an extraordinary writ in this court. But on appeal, with plenty of time to consider and research the issue, WPR still has not identified, in either its brief or at oral argument, any such rule or statute. Under its reading of section 602.8(4)(a), subsection (ii) would never be reached. Effectively, the statute would simply say that a sponsor

---

[4] *Lancer Insurance Company* applied the canon of independent meaning—a close counterpart of the surplusage canon. *See* 2017 UT 8, ¶ 13. While applied in slightly different circumstances, the logic underlying the two canons is identical. The canon of independent meaning is used to differentiate two statutory provisions by presuming that the legislature did not intend "to enact a provision that says nothing not already stated elsewhere." *Id.* And while some commentators consider independent meaning a subset of surplusage, *see* SCALIA & GARNER, READING LAW at 176, here we use the surplusage canon to give meaning to a statutory provision in the first instance, without juxtaposition to any other provision.

may "challenge or appeal the decision to the Supreme Court, by means of an extraordinary writ."

¶35 WPR offers no explanation for why the legislature would enact a statutory provision that "has no operative effect." Because WPR's suggested reading of section 602.8(4)(a) would render subsection (ii) a "nullity," the surplusage canon is "at its strongest" here. Accordingly, we are reluctant to adopt that interpretation.

*C. Subsection 602.8(4)(a) Is Best Interpreted in Harmony with Our Rules of Procedure and Case Law*

¶36 While WPR's interpretation of section 602.8(4)(a) is problematic for the reasons discussed, appellants' suggested interpretation presents no such problems. We agree with appellants that rule 19 and our case law applying it to similar election statutes resolve the statutory ambiguity here.

¶37 As previously explained, this court has sole authority to "issue all extraordinary writs" and to define the contours of that process. *Supra* ¶ 23. "[T]his court typically limits itself to addressing only those petitions that cannot be decided in another forum." *Carpenter v. Riverton City*, 2004 UT 68, ¶ 4, 103 P.3d 127. To this end, rule 19 requires a petition for an extraordinary writ to include "[a] statement of the reasons why no other plain, speedy, or adequate remedy exists" and, when the petition is filed in a court other than the district court, "a statement explaining why it is impractical or inappropriate to file the petition for a writ in the district court." UTAH R. APP. P. 19(b)(4)–(5). Because rule 19 expresses our singular power to issue extraordinary writs, and because we presume the legislature does not intend a statutory interpretation "which raises serious constitutional doubts," *Hatfield*, 2020 UT 1, ¶ 39 (citation omitted), rule 19 informs our interpretation of section 602.8(4)(a). Put plainly, a sponsor is "prohibited from pursuing" an extraordinary writ in this court when they cannot satisfy rule 19's requirements.

¶38 As appellants point out, this interpretation is consistent with our case law interpreting a similar provision of the Election Code. While section 602.8 prescribes procedures specific to a referendum application for a local land use law, Utah Code section 20A-7-607 regulates the acceptance or rejection of the actual, circulated referendum, with signatures. Prior to being amended in 2019,[5] section 607(4)(a) read: "If the local clerk refuses

---

[5] 2019 Utah Laws ch. 203, § 32 (H.B. 119).

to accept and file any referendum petition, any voter may apply to the Supreme Court for an extraordinary writ to compel the local clerk to do so." UTAH CODE § 20A-7-607(4)(a) (2018). In *Anderson v. Provo City*, we addressed whether a voter seeking relief in this court under section 607(4)(a) must comply with rule 19's requirements.[6] 2016 UT 50, 387 P.3d 1014. We held that the statute does not "relieve Petitioners of the need to meet the requirements of" rule 19(b)(4)–(5). *Id.* ¶ 6. And we accordingly denied their petition for extraordinary writ because they had failed to show that it would have been "inappropriate" or "impractical" for them to have filed in the district court. *Id.* ¶ 3. In so doing, we rejected the petitioners' argument that the legislature sought to mandate filing referendum challenges in this court—suggesting that the legislature's intent instead was to ensure voters were aware that they could file directly in this court under appropriate circumstances that meet the requirements of rule 19, such as when a referendum challenge is urgent and cannot be adequately and timely resolved in the district court. *See id.* ¶ 4 ("While many ballot disputes will present tight timelines that will make it either impractical or inappropriate to file in the district court, that will not always be the case.").

¶39 Our reasoning in *Anderson* is persuasive and applicable to the question before us today. Accordingly, we adopt a reading of section 602.8(4)(a) parallel to our settled interpretation of section 607(4)(a). Such an interpretation is consistent with our constitution, our case law, and the legislature's presumed intent.

¶40 We hold that, under section 602.8(4)(a), a sponsor is "prohibited from pursuing" an extraordinary writ in the Supreme Court if they cannot satisfy the requirements of rule 19. Specifically, a sponsor may file their challenge in the district court unless doing so would be "impractical or inappropriate" and unless seeking an extraordinary writ in this court is the only

---

[6] We were previously asked, in *Low v. City of Monticello* and again in *Carpenter v. Riverton City*, to determine whether section 607(4)(a) barred voters from challenging referendum decisions in the district court. 2002 UT 90, 54 P.3d 1153, *overruled on other grounds by Carter v. Lehi City*, 2012 UT 2, 269 P.3d 141; 2004 UT 68. In both instances, we found that it did not and held that the statute "is permissive in nature and does not designate this court as the exclusive location where relief may be sought." *Carpenter*, 2004 UT 68, ¶ 4 n.3.

"plain, speedy, or adequate remedy." *See* UTAH R. APP. P. 19(b)(4)–(5).

### D. Appellants Properly Sought Relief in the District Court

¶41 There is no indication that appellants could have satisfied rule 19's requirements to obtain an extraordinary writ in this court. Nothing suggests that seeking relief in the district court would have been "impractical or inappropriate" and that the district court could not have provided a "plain, speedy, or adequate remedy." UTAH R. APP. P. 19(4)–(5).

¶42 There is no evidence that construction of the ski resort was imminent or that a referendum would need to be immediately placed on the ballot to avoid the ski resort's construction. Like in *Anderson*, there is no apparent "tight timeline" attached to the appellants' challenge that would make the district court an inadequate forum for resolving the challenge. *See Anderson*, 2016 UT 50, ¶ 4. The referendum application is not tied to any specific election or other deadline that would demand immediate resolution and prevent the district court from providing a "plain, speedy, or adequate remedy" as would be necessary to satisfy rule 19's requirements. Moreover, it has been over eighteen months since the referendum application was rejected, yet appellants' alleged injury may still be redressed through a referendum. Because appellants could not satisfy Rule 19, we conclude that they were not required to file a petition for extraordinary writ in this court and properly filed their challenge in the district court.

## II. WE DECLINE TO REACH WPR'S SUGGESTED ALTERNATE GROUNDS FOR AFFIRMANCE

¶43 Alternatively, WPR asks us to affirm the county's decision to reject the referendum application as a matter of law. "We will affirm the ruling of a lower court on alternate grounds only when the ground or theory is 'apparent on the record,'" meaning that the record must contain "sufficient and uncontroverted evidence" supporting the alternate grounds. *Francis v. State, Utah Div. of Wildlife Res.*, 2010 UT 62, ¶ 10, 248 P.3d 44 (citation omitted). Still, our decision to do so is discretionary, even if an alternate ground presents a question purely of law. *See id.* ¶¶ 18–19. In some circumstances, we may benefit from the district court's analysis of the alternate grounds in the first instance. Such is the case here.

¶44 WPR submits three reasons why appellants' referendum application was deficient. WPR made these same arguments to the

district court in its Motion to Dismiss for Lack of Jurisdiction and, in the Alternative, For Summary Judgment. However, the district court found that it lacked jurisdiction and did not reach the merits of the motion for summary judgement. We address each argument in turn and explain why we are not well positioned to decide each alternate ground.

¶45    First, WPR argues that appellants failed to include "a certification that each of the sponsors is a resident of Utah" as required by Utah Code section 20A-7-602(2)(b) (2020).[7] Although each sponsor included their printed name and Utah address below their signature line on the application, WPR asserts this is not good enough. In its view, appellants needed to include a "formal attestation" as to the truth of their residency.

¶46    Utah law has not categorically decided if and when a signature suffices as a "certification." While our rules of civil procedure and case law may shed some light on the subject, the answer may depend on the contents and nature of the application as a whole. As such, the district court will be better positioned on remand to apply our existing body of law to the appropriate facts.

¶47    Second, WPR asserts that appellants failed to properly notarize four of their five signatures as required by Utah Code section 20A-7-602(2)(d). Appellant Croft, herself a commissioned notary public, notarized those four signatures. However, "[a] notary may not perform a notarial act if the notary: (1) is a signer of the document . . . [or] (2) is named in the document." UTAH CODE § 46-1-7(1)–(2). Thus, WPR argues, Croft was disqualified from notarizing the other sponsors' signatures.

¶48    While the text of Utah Code section 46-1-7 is clear, the consequences of its violation are not. Indeed, the same chapter also provides: "If a notarial act is performed contrary to or in violation of this chapter, that fact does not of itself invalidate

_____

[7] The County Clerk rejected the referendum application on this basis and on the basis that it did not contain a copy of the challenged ordinance pursuant to Utah Code section 20A-7-602(2)(e)(i). Appellants did not specifically address in their complaint this latter basis, nor did WPR brief it in WPR's Motion to Dismiss for Lack of Jurisdiction and, in the Alternative, For Summary Judgment. On remand, the district court will be better positioned to determine if appellants have sufficiently pled a challenge to this latter basis and, if so, whether WPR has preserved any defense of it.

notice to third parties of the contents of the document notarized." *Id.* § 46-1-22. WPR claims that a deficient notarial act renders the associated signatures invalid. Appellants respond by pointing to several out-of-state cases for the proposition that a deficient notarial act will not invalidate a document unless it results in an "improper benefit" or prejudice to a party. Given the vacuum of factual development below on this issue, we decline to decide the proper standard. Instead, we remand this claim so the district court can hear further argument as to the appropriate standard and make any factual findings necessary to its implementation of that standard.

¶49 Finally, WPR argues that appellants failed to timely file their referendum application. Any application challenging a local law must be filed "before 5 p.m. within seven days after the day on which the local law was passed." *Id.* § 20A-7-601(5). WPR points to two key pieces of evidence indicating that the referendum application was submitted after 5:00 p.m. on the seventh day. First, an attorney for WPR filed an affidavit stating that she was present at the Morgan County Offices that afternoon, witnessed Croft deliver the application to the County Clerk's office at 5:04 p.m., and took several pictures of Croft in the County Clerk's office that were timestamped "5:04 p.m." by her phone's software. Second, the County Clerk wrote on the application: "rec'd 11-6-19 5:05 pm." Appellants respond that their own affidavits refute WPR's version of the facts. For example, Croft stated she has been to the County Offices many times, has noticed that the building's various clocks are rarely in sync with one another or outside timepieces, and, to the best of her knowledge, submitted the referendum application before 5:00 p.m. And petitioner Paige, the last sponsor to sign the application, stated that she did so and left the County Offices by 4:56 p.m.

¶50 WPR asks us to grant its motion for summary judgment in the alternative on the basis that appellants filed their referendum application after 5:00 p.m. However, when considering a motion for summary judgment, a court must view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation omitted). Viewing the disputed facts in the light most favorable to appellants, we conclude that a genuine issue of material fact exists regarding the timeliness of the referendum application. We therefore decline to affirm on this ground and remand to the district court for findings of fact on this issue.

**CONCLUSION**

¶51   In sum, section 602.8(4)(a) is ambiguous because it does not describe the circumstances under which sponsors of rejected referendums are "prohibited from pursuing an extraordinary writ" in this court. We hold that rule 19 of the Utah Rules of Appellate Procedure explains when sponsors are "prohibited from pursuing an extraordinary writ" in this court, as this is the only interpretation consistent with principles of statutory interpretation and our case law. Here, appellants could not satisfy rule 19's requirements for filing an extraordinary writ in this court and therefore properly raised their challenge in the district court. We therefore reverse the district court's dismissal for lack of jurisdiction and remand to the district court for further proceedings.

———————