*This opinion is subject to revision before final publication in the Pacific Reporter*

**2015 UT 86**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STEPHANIE GRICIUS, KAMME EDSBERG, MELISSA BRADLEY, and COLBY CURTIS,
*Petitioners,*

*v.*

SPENCER J. COX,
Lieutenant Governor,
*Respondent.*

No. 20150581
Filed September 23, 2015

Attorneys:

Stephanie Gricius, Kamme Edsberg, Melissa Bradley,
Colby Curtis, Salt Lake City, pro se

Sean D. Reyes, Att'y Gen., Thom D. Roberts, Asst. Att'y Gen.,
Salt Lake City, for respondent

PER CURIAM:

¶1   This matter is before the court on a petition for extraordinary relief filed by Stephanie Gricius, Kamme Edsberg, Melissa Bradley, and Colby Curtis. Previously, a similar petition was filed by Fred C. Cox,[1] but we determined he lacked standing because he had not identified himself as one of the prospective sponsors of the proposed referendum petition described by his petition.

¶2   This petition has been filed by four of the prospective sponsors of that referendum petition. The petition pertains to a contemplated referendum for the repeal of HB 454, entitled "Prison Development Amendments," enacted by the Legislature during its 2015 General Session, which ended on March 12, 2015. It asserts that the group of sponsors prepared a referendum application and "attempted to submit their Application on March 27, 2015, but [were] refused and denied that opportunity by the Utah [Lieutenant] Governors' Election Office, based on the [five-day] deadline found in Utah Code 20A-7-302."

---

[1] Case number 20150261.

¶3    Section 20A-7-302 states:

> (1)    Persons wishing to circulate a referendum petition shall file an application with the lieutenant governor within five calendar days after the end of the legislative session at which the law passed.
>
> (2)    The application shall contain:
>
>> (a) the name and residence address of at least five sponsors of the referendum petition;
>>
>> (b) a certification indicating that each of the sponsors:
>>
>>> (i)  is a voter; and
>>>
>>> (ii)  has voted in a regular general election in Utah within the last three years;
>>
>> (c) the signature of each of the sponsors, attested to by a notary public; and
>>
>> (d) a copy of the law.

The petition implies that the five-day deadline is unconstitutional because, as a practical matter, referenda sponsors cannot comply. It notes the period for the Governor to review a bill passed by the Legislature exceeds the five-day period, and it assumes the term "law," as employed by section 20A-7-302, must refer to a bill that has been signed by the Governor or not vetoed within the period he is afforded to review the bill.[2]  The petition does not include any affidavits or other documentation in support of its factual allegations except a copy of an application for a referendum that was prepared by the sponsors.

¶4    The Lieutenant Governor filed a response on August 6, 2015, and an affidavit from Mark Thomas, the Lieutenant Governor's Chief of Staff and Director of Elections, which stated that his office "ha[d] not refused to accept or file the referendum petition," that it

---

[2] Previously, Mr. Cox's petition also asserted that an enrolled copy of the bill often will not be available for several days after the end of the legislative session.  This petition also includes a cursory referenced to the unavailability of an enrolled copy but has not proffered any argument that a delay in the availability of an enrolled copy of the bill separately prevented the sponsors from complying with the statutory application requirements.

"received at least two phone[ ] calls toward the end of March 2015 with regard to the time to file an application for a referendum," and that "on both occasions the caller was advised that under the statute the application must be filed within 5 days of the end of the legislative session."[3]

¶5 When an appellate court considers a petition for extraordinary relief without any record generated by prior litigation or other official proceedings, it ordinarily may grant relief only if that relief is based on allegations properly supported by affidavit or other reliable documentation.[4] *See Carpenter v. Riverton City*, 2004 UT 68, ¶ 5, 103 P.3d 127; *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66,¶ 41, 289 P.3d 502. The petition fails to satisfy the requirement of demonstrating that its allegations are supported by affidavit .

---

[3] In connection with our consideration of the prior petition, we requested that Mr. Cox and the Lieutenant Governor file supplemental pleadings addressing the standing issue that we ultimately deemed determinative. We also asked the parties to address the question of

> what form of the 'copy of the law' must be attached to an application for a referendum petition under Utah Code § 20A-7-302(2)(d); and, if the term 'law' is construed to mean 'a bill passed by the Legislature,' how does an applicant comply with that requirement if a copy of the enrolled version of the bill is not available within the five-day limit specified by Section 20A-7-302(1)?

[4] This is because our only means of resolving disputed material facts in the first instance and in conformity with the requirements of due process is to make a referral to a special master; and we undertake those referrals only in exceedingly rare circumstances. Additionally, there is some question as to whether this court should consider any argument pertaining to the requirement that the law challenged by the referendum be attached to the referendum application. That argument has not been clearly stated in the petition. A petitioner has the burden of clearly presenting all arguments within the original petition, may not present new argument that could have been raised in the original petition in a reply to a response, and is required to submit pleadings in a proper form.

¶6    But even if we accepted the petition's factual allegations, we would not be persuaded that it has established a constitutional violation because it has not described any circumstances that actually prevented the sponsors from filing their application within the specified deadline.    In that regard, it appears the petition depends on the assumption that the use of the term "law" within section 20A-7-302 cannot be deemed to refer to a bill passed by the Legislature, or that the term is so ambiguous as to preclude compliance.    While it is true that the term "law" employed in isolation ordinarily may refer to a presently effective legal mandate, such a definition clearly is inapplicable when the context provided by other text within section 20A-7-302 is considered.    The reference to a "law" within the provision establishing the five-day deadline cannot be interpreted to mean a legislative edict that is presently effective or that has been approved or not vetoed by the Governor because the deadline also clearly and explicitly references the end of the legislative session as the starting point for calculating the deadline.    Thus, there is no reasonable interpretation of the term "law" that could mean anything other than a bill passed by the Legislature in whatever form it exists at the time the legislative session ends.    And, even assuming a reasonable person could be confused by the use of the term "law," the specification of the deadline at a minimum should prompt that person to inquire about available means of compliance before the expiration of that deadline.[5]    Yet, in this case, there is no allegation that any inquiry was directed to the Lieutenant Governor's office prior to March 27, 2015, fifteen days after the end of the legislative session.

¶7    Additionally, we can discern no basis for perceiving an infringement of constitutional rights arising from the possibility that the sponsors' initial efforts would be rendered moot by a veto that would have provided them with the same outcome they intended to seek through the referendum.    The remedies of a veto and a referendum are independent and complementary in nature. Opponents of a bill passed by the Legislature are free to lobby the Governor at the same time they embark on the path of seeking repeal through the voice of the people, and we cannot see how they could claim any disappointment, let alone any violation of their

---

[5] "A bill passed by the Legislature" would perhaps be more precise language than "law."    Nonetheless, in the context of the statute, the term "law" provides adequate notice of the form and status of the matters to which the statute refers.

4

constitutional rights, if the Governor's exercise of his prerogative as to the former relieves them of the burden of undertaking the latter.

¶8     Finally, insofar as the petition properly can be construed as timely and adequately raising an issue regarding the form of the "law" that the statute requires the sponsors to attach to the application, *see supra* ¶ 4 n.3, its claim of ambiguity may carry more weight.  If the statute may be construed as requiring an enrolled copy of the bill, and such a copy is not available before the passage of the deadline for filing the application, then sponsors would have no practical means of complying with the statute.  But again, in that context the statute can be construed only as requiring whatever form of the bill the sponsors reasonably can obtain for attachment to a timely application.[6]  And, to the extent sponsors of a referendum application have made a good faith effort to comply with the statute by attaching a copy of the most recent version of the bill that is available to them, the Lieutenant Governor clearly cannot refuse the application.[7]  We also do not read the statute to preclude the Lieutenant Governor from supplying a more proper or accurate copy of the bill for purposes of circulation for signature.  Indeed, such a substitution might be appropriate, or even necessary, in some circumstances.[8]

¶9     In sum, we conclude that Petitioners have not provided us with a sound basis for declaring section 20A-7-302 of the Utah Code unconstitutional on its face or as applied to the facts it they have

---

[6] In his response to our prior inquiry, the Lieutenant Governor asserted that a copy of the bill passed by the Legislature is available on the Legislature's website within five days of the date of the end of the session.

[7] Insofar as the petition implies an argument based on the sponsors' inability to know the precise details of the bill until they receive an enrolled copy, we are not persuaded. Sponsors who have complied with the relatively simple and straightforward requirements of the application process are not obligated to move forward with the much more arduous task of obtaining and submitting signatures on a referendum if further review of the minute details of a passed bill persuades them to abandon the effort.

[8] A statutory amendment to clarify the manner in which referenda sponsors may satisfy the statutory requirement to attach a copy of the "law" might be appropriate, but we leave that to the judgment of the Legislature.

sufficiently alleged.  Accordingly, we decline to grant the relief they request.

———————