**2022 UT 41**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

UTAH DEMOCRATIC PARTY and JOSHUA HARDY,
*Petitioners*,

*v.*

DEIDRE M. HENDERSON, in her Official Capacity as
Lieutenant Governor of Utah, and
JOEL FERRY, individually and in his Official Capacity as acting
director of the Utah Department of Natural Resources,
*Respondents*.

No. 20220826
Filed December 15, 2022

On Motion for Emergency Relief and Petition for Extraordinary Writ

Attorneys:

David P. Billings, Salt Lake City, for petitioners

Stanford E. Purser, Dep. Solic. Gen., Peggy E. Stone, Asst. Solic. Gen.,
Scott Cheney, Jason Dupree, Asst. Atty's Gen., Salt Lake City,
for respondent Deidre M. Henderson

Sean D. Reyes, Att'y Gen., Andrew Dymek, Erin T. Middleton,
Stephen W. Geary, Sarah Goldberg, Asst. Solics. Gen.,
Salt Lake City, for respondent Joel Ferry

PER CURIAM:

¶ 1 This case arises from a motion for emergency relief and a petition for extraordinary writ. We previously denied the motion in an order issued on September 22, 2022, and indicated we would issue a subsequent opinion. We now set forth the basis for the denial of the motion and we deny the petition for extraordinary writ for the same reason.

### BACKGROUND

¶ 2 On February 28, 2022, Joel Ferry, an incumbent member of the Utah Legislature, filed a declaration of candidacy for re-election to his seat for District 1 of the Utah House of Representatives. Joshua Hardy submitted a declaration of candidacy for the same seat. The Lieutenant Governor's Office accepted those declarations. Mr. Ferry

was subsequently selected to represent the Utah Republican Party as its candidate for House District 1, and Mr. Hardy was selected to represent the Utah Democratic Party (UDP) as its candidate for the same seat.

¶ 3 On June 24, 2022, Governor Spencer Cox appointed Mr. Ferry as the Director of the Department of Natural Resources (DNR), which is a position that requires the approval of the Utah Senate. Shortly thereafter, Mr. Ferry began serving as the acting director of the DNR pending approval of his appointment.[1]

¶ 4 On August 17, two weeks before the deadline for the Lieutenant Governor to certify candidates for ballots for the November 2022 general election, the UDP and Mr. Hardy sent a letter to the Lieutenant Governor, Deidre Henderson, and the Director of Elections, Ryan Cowley. That letter raised concerns about Mr. Ferry holding his House seat while he worked for the DNR. It also claimed Mr. Ferry's acceptance of an appointment to an executive branch office disqualified him from serving in the Legislature or being a candidate in the upcoming general election, and it requested that his name be removed from the ballot.

¶ 5 On August 24, Lieutenant Governor Henderson replied. With regard to Mr. Ferry's circumstances, she "ma[de] no conclusion regarding the constitutionality of his status as a legislator or as acting director of the Utah Department of Natural Resources."[2] And as to the upcoming election, she reasoned "[his] status as a current or former legislator d[id] not affect his status as a candidate and d[id] not require . . . [his] remov[al] . . . from the November ballot." Lieutenant Governor Henderson recited several statutory grounds for forfeiture of a position on the ballot, including death, resignation as a consequence of disability or a decision to run for the presidency or vice presidency of the United States as referenced in section 20A-1-501 of the Utah Code, failure to file a financial statement or report required by section 20A-11-305, or voluntary withdrawal as contemplated by subsection 20A-9-202(6). She then stated that, "[i]n the absence of any of [those specified] circumstances, there [was] no

---

[1] It appears Mr. Ferry was confirmed as Director on September 21, 2022.

[2] Shortly thereafter, Mr. Ferry resigned his seat in the Legislature, but he did not withdraw his name as a candidate for the 2022 general election.

statutory basis on which [she could] affirmatively disqualify a candidate."

¶ 6 On August 31, the Lieutenant Governor's Office certified to the county clerks the names of the candidates for elected offices, including Mr. Ferry's name. *See* UTAH CODE § 20A-9-701. Following an unsuccessful attempt to raise state law claims in federal court,[3] the UDP and Mr. Hardy filed this petition for extraordinary writ on Friday September 16, 2022. They simultaneously filed a motion for emergency relief.

¶ 7 The petitioners stated their claims for relief in varying terms, but they fundamentally sought an order compelling the Lieutenant Governor to remove Mr. Ferry from the ballot.[4] The petition stated: "The case must be resolved before overseas ballots are sent on September 23."[5] *See* 52 U.S.C. § 20302(a)(8)(A). On September 21, Lieutenant Governor Henderson and Mr. Ferry filed responses to the motion for emergency relief. On September 22, we issued an order summarily denying the motion for emergency relief and indicating this opinion would follow. On September 27, Lieutenant Governor Henderson and Mr. Ferry filed separate responses to the petition for extraordinary writ.

---

[3] The federal district court declined to exercise supplemental jurisdiction over the state law claims and denied a motion for a preliminary injunction in relation to certain federal law claims. It appears those federal law claims were still pending in the federal action when the petition and motion raising state law claims were filed with us.

[4] The petitioners also requested an award of attorney fees and costs pursuant to Utah Code section 78B-6-609. That request is denied.

[5] Another portion of the petition treats the deadline as September 24. The federal statute, 52 U.S.C. § 20302(8)(A), requires mailing at least 45 days before the general election. This year, that deadline fell on Saturday, September 24; and state election officials treated it as occurring on the immediately preceding business day, or September 23. Regardless of which date constituted the deadline, our analysis of the motion and the petition is the same.

## ANALYSIS

¶ 8 We now explain the reason for our denial of the motion for emergency relief. And we rely on the same reason for denying the petition for extraordinary writ.

¶ 9 A motion for emergency relief under rule 23C of the Rules of Appellate Procedure "should not incorporate requests for relief that require something less than emergency treatment." *Snow, Christensen & Martineau v. Lindberg*, 2009 UT 72, ¶ 7, 222 P.3d 1141 (per curiam) (addressing predecessor provision located in Rule 8A). In this case, the petition's statement that the "[t]he case must be resolved before overseas ballots are sent on September 23" made clear that the motion and the petition sought the same relief, consisting of an emergency order mandating a ballot change prior to the deadline imposed by federal law for mailing ballots to eligible voters residing outside the United States.[6]

¶ 10 A petitioner requesting an extraordinary writ also "must demonstrate that the court should exercise its discretion to grant relief." *Gilbert v. Maughan*, 2016 UT 31, ¶ 18 n.7, 379 P.3d 1263 (citing *State v Barrett*, 2005 UT 88, ¶ 24, 127 P.3d 682). And a petitioner claiming that an exercise of the court's discretion is warranted likewise must demonstrate the timeliness of the petition and the availability of the relief requested. *See, e.g.*, *Krejci v. City of Saratoga Springs*, 2013 UT 74, ¶ 10, 322 P.3d 662 (explaining that rule 19 of the Rules of Appellate Procedure does not supply "a remedy for self-imposed emergencies"); *Gricius v. Cox*, 2015 UT 86, ¶ 5, 365 P.3d 1198 (per curiam) ("[A]n appellate court . . . ordinarily may grant [extraordinary] relief [in the first instance] only if that relief is based on allegations properly supported by affidavit or other reliable documentation."); *cf. Snow, Christensen & Martineau*, 2009 UT 72, ¶ 7 n.2 (explaining that emergency relief is not warranted where the "'emergency' has arisen from petitioners' own unjustified delay in seeking relief").

---

[6] The petitioners raised no claim in the petition or motion that Mr. Ferry was not qualified for legislative office at the time he filed his declaration of candidacy. Rather, they maintained that he became unqualified as soon as he was appointed as Director of the DNR and that he did not intend to assume the legislative office for which he was running.

Per Curiam

¶ 11  In this case, Mr. Ferry's appointment as Director of the DNR was announced on June 24, and the UDP and Mr. Hardy did not ask the Lieutenant Governor to remove Mr. Ferry from the ballot until August 17. They then filed their petition with us on September 16, only one week before the mailing deadline referenced in that petition. Moreover, neither the petition nor the motion supplied a factual basis for us to assume that a change to the ballot prior to the mailing deadline would be available as of the date the petition and motion were filed, let alone within the much shorter period of time that would remain after the respondents were afforded their right to adequate notice and an opportunity to respond. The response to the motion for emergency relief was not due until September 21.[7] And the response to the petition was not due until September 28, well after the mailing deadline. If anything, the documentation accompanying the petition and motion strongly suggested that there would not be time to alter the ballots before the mailing deadline even if the court ruled immediately after the response to the motion was filed.[8] Because the motion and petition failed to demonstrate that the relief the petitioners requested was timely sought and available, we decline to exercise our discretion to grant the motion on an emergency basis. For the same reason, we decline to exercise our discretion to grant the petition.

———————————

[7] To afford respondents due process, rule 23C specifies a period of three business days after service of the motion to file responses to a motion for emergency relief. *See* UTAH R. APP. P. 23C(d). In this case, the deadline for response was September 21.

[8] The petition included an affidavit submitted by Mr. Cowley in the federal court action. That affidavit detailed the processes for third-party vendors to prepare and print ballots, asserted changes to the ballot generally must be submitted prior to the certification deadline, and claimed uncertainty as to whether any changes could be made before the petition and motion were filed with us.