*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 44**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STEVEN MAXFIELD, *et al.*,*
*Self-Represented Petitioners,*

*v.*

GOVERNOR SPENCER J. COX and
LIEUTENANT GOVERNOR DEIDRE M. HENDERSON,
*Respondents.*

No. 20250701
Filed October 17, 2025

On Petition for Extraordinary Relief

Attorneys:

Derek E. Brown, Att'y Gen., Scott Cheney, Asst. Att'y Gen.,
Sarah Goldberg, Asst. Solic. Gen., Salt Lake City, for respondents

PER CURIAM**

¶1 A group of sponsors submitted three applications for statewide initiatives that were titled as the "Tax and Revenue Initiative," the "Planning and Zoning Initiative," and the "Save GRAMA Initiative."[1] None of the applications proposed any specific text to be implemented as readily codifiable laws. Instead, the initiatives, if adopted by Utah voters, would require the Legislature to repeal entire titles within the Utah Code—or in the

---

* Additional Petitioners: Daniel Newby, Tracie Halvorsen, Brent Odenwalder, Bart Grant, Nancy Inman, Kerry Lund, Sharla Christie, Nancy Lord, Janalee Tobias, and Wayne Wickizer.

** The petition for extraordinary relief was referred to the full court for consideration. Having recused himself, Associate Chief Justice John Pearce does not participate herein. District Judge Kara L. Pettit sat in his place.

[1] The sponsors also submitted an application for an "Initiative Initiative." That initiative is not at issue here.

case of the "Save GRAMA Initiative," an entire chapter—and to recodify them according to certain instructions. For example, the "Tax and Revenue Initiative" provided that it would "repeal in its entirety Utah Code Title 59 Revenue and taxation" and require the Legislature to adopt a revised Title 59 "with the following being the only allowed funding for all state and local agencies:" (1) a "5% import tariff on all products imported into the state;" and (2) a "5% export tariff on all exports in the state except, if the export is defined as natural AI resources, water, alfalfa, minerals, animals of husband are to a foreign nation the export tax shall be 10,000%."[2]

¶2　The Lieutenant Governor determined that the applications failed to comply with former subsection 20A-7-202(2)(e)(iii) of the Utah Code (Mar. 5, 2025), which required inclusion of "the text of the proposed law."[3] She also determined that the applications failed to comply with subsection 20A-7-202(5) because: (1) the Planning and Zoning Initiative was "nonsensical" and "could not become law if passed;" (2) the Save GRAMA Initiative was "nonsensical," "could not become law if passed," and "the subject of the proposed law [was] not clearly expressed in the law's title;"

---

[2] The "Planning and Zoning Initiative" provided that it would "repeal in its entirety Utah Code Title 10 Utah municipal code" and require the Legislature to adopt "Title 10 The People's Municipal code" with the following instructions: the Legislature "shall put into code and enshrine[] the people's right to use their property for their use and benefit," except that the people "may use their property for any use unless it substantially affects the neighboring property's owners use and enjoyment of their property," or "the use impacts the Safety, health or welfare of the community."

The "Save GRAMA Initiative" provided that it would "repeal in its entirety Utah Code Title 63G Chapter 2 Government Records and Management Act (GRAMA)," and require the Legislature to "adopt Utah Code Title 63G Chapter 2 The People's Open Sunshine Laws." The initiative further instructed the Legislature to "ensure the following provisions": (1) "The legislature shall ensure all government meetings are posted and open to the public;" (2) "Executive or closed sessions/meetings are PROHIBITED;" and (3) "The government shall NOT RESTRICT ANY CITIZEN from speaking at any of these meetings."

[3] That requirement was later moved to subsection (2)(e)(iv). *See* UTAH CODE § 20A-7-202(2)(e)(iv) (Mar. 24, 2025).

and (3) the Tax and Revenue Initiative is "unconstitutional." (Citing UTAH CODE § 20A-7-202(5) (Mar. 5, 2025).) Accordingly, the Lieutenant Governor rejected the applications, directed the Office of the Legislative Fiscal Analyst to cease preparation of fiscal impact statements, and sent notices of the rejections to the sponsors.

¶3 The sponsors filed a petition for extraordinary relief directly with us. That petition named Governor Spencer Cox and Lieutenant Governor Deidre Henderson as respondents. The respondents filed a response to the petition upon our request.

¶4 The sponsors seek relief in the form of rescission of the rejections of the initiative applications, extension of timelines for placing the initiatives on the ballot, a directive to the fiscal analyst to resume preparation of fiscal impact statements, and an injunction against "over 100 bills passed during the 2025 legislative session" that pertain to the code titles addressed by the initiatives.

¶5 The sponsors also contend that it would be impractical or inappropriate for them to seek relief in the district court based on their assumption that the court would be unable to provide that relief before the February 15, 2026 signature deadline. We limit our decision in this opinion to addressing that timing contention and to dismissing the petition based on our rejection of it.

¶6 Rule 19 of the Utah Rules of Appellate Procedure provides that "[w]hen no other plain, speedy, or adequate remedy is available, a person may petition an appellate court for extraordinary relief referred to in Rule 65B of the Utah Rules of Civil Procedure." UTAH R. APP. P. 19(a); *see also Cox v. Laycock*, 2015 UT 20, ¶ 47, 345 P.3d 689 ("A petition for extraordinary writ is appropriate only when no other plain, speedy and adequate remedy is available." (cleaned up)). And rule 19 requires that, "except in cases where the petition is directed to a trial court," a petitioner explain "why it is impractical or inappropriate to file the petition in the trial court." UTAH R. APP. P. 19(e)(6); *see also Croft v. Morgan Cnty.*, 2021 UT 46, ¶ 37, 496 P.3d 83 ("This court typically limits itself to addressing only those petitions that cannot be decided in another forum." (cleaned up)).

¶7 In this case, the sponsors contend that they had no other "plain, speedy, or adequate remedy" to address the rejection of their initiatives because district court litigation could not "provide timely relief." But the sponsors' contention is based on unfounded speculation. When the Lieutenant Governor denied their

applications, there were over ten months until the February 15, 2026 deadline. And the sponsors have not shown why they could not have sought, if necessary, expedited relief from the district court to meet that deadline. *See, e.g.*, *Zonts v. Pleasant Grove City*, 2017 UT 71, ¶ 5 n.2, 416 P.3d 360 (per curiam) (noting an opportunity for litigants and district courts to "collaborate to make every reasonable effort to expedite the proceedings").[4] Accordingly, the sponsors have failed to articulate a legitimate justification for seeking to bypass the district court. *See, e.g.*, *Anderson v. Provo City*, 2016 UT 50, ¶ 6, 387 P.3d 1014 (per curiam) (determining petitioners had failed to "shoulder[] their burden of establishing that it would be impractical or inappropriate for them to file their petitions in the district court").

¶8    We dismiss the petition without prejudice to a filing in the district court pursuant to rule 65B.

---

[4] The sponsors suggest that there would not have been adequate time for discovery and trial. But that assertion raises competing concerns. On the one hand, the Lieutenant Governor's decisions on the initiatives submitted by the sponsors appear to have been based on determinations that the applications, on their face, did not meet statutory requirements. Thus, it is unclear from the petition why discovery or trial would have been necessary. On the other hand, if the sponsors' petition requires significant factual development and resolution as they suggest, a rule 19 writ is a poor vehicle. *Cf. Gricius v. Cox*, 2015 UT 86, ¶ 5, 365 P.3d 1198 (per curiam) ("When an appellate court considers a petition for extraordinary relief without any record generated by prior litigation or other official proceedings, it ordinarily may grant relief only if that relief is based on allegations properly supported by affidavit or other reliable documentation.").